**BUSHKIN ASSOCIATES, INC. and Merle J. Bushkin, Plaintiffs,**

v.

**RAYTHEON COMPANY, Defendant.**

**Civ. A. No. 81–1101–H.**

United States District Court,
D. Massachusetts.

July 7, 1988.

On Motion to Reconsider July 8, 1988.

Nancy Gertner, David Fine, Silverglate, Gertner, Baker, Fine, Good & Mizner, Boston, Mass., for plaintiffs.

Edward I. Masterman, Cargill & Masterman, Boston, Mass., for defendant.

OPINION

HARRINGTON, District Judge.

*Background*

This case involves a cause of action brought in 1981 by plaintiff Merle J. Bushkin, an investment banker, and Bushkin Associates, Inc., an investment banking firm, against Defendant Raytheon Company ("Raytheon"). Plaintiffs seek to recover damages on theories of express and implied contract, in connection with their role in the merger of Raytheon with Beech Aircraft Corporation. In 1983 Judge Joseph L. Tauro granted Raytheon's motion for summary judgment. *Bushkin Associates, Inc. v. Raytheon Co.,* 570 F.Supp. 596 (D.Mass.1983), *vacated,* 760 F.2d 251 (1st Cir.1985). The Court of Appeals reversed

and certified the case to the Massachusetts Supreme Judicial Court for decisions on choice of law and other questions. *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 473 N.E.2d 662 (1985). After the state court decision, there was a trial in District Court which resulted in a directed verdict for defendant on all counts. Immediately following the directed verdict, plaintiffs' prior trial counsel requested and received the permission of the trial court and opposing counsel to question the jurors about their impressions of the case, but each of the jurors expressly declined to answer any questions. After their refusal, Judge Skinner stated, "That's the end of it," and he dismissed the jury. Defendant's Memorandum in Support of Motion to Dismiss at 2–3 (quoting Trial Transcript Day Nine at 9–33 to 9–36).

The First Circuit reversed the decision of the District Court and remanded for a new trial, scheduled for July 6, 1988. *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142 (1st Cir.1987).

On Friday, July 1, 1988, defendant Raytheon brought a motion to dismiss or, alternatively, to disqualify plaintiffs' counsel on the basis of their post-verdict contact with jurors from the first trial. Defendant alleged that plaintiffs' counsel violated a rule of the District of Massachusetts which prohibits such contact. For reasons described below, the Court disqualifies plaintiffs' counsel from further representation in this case.

### Facts

■ On June 29, 1988, plaintiffs' counsel revealed to defendant's counsel that plaintiffs' counsel had conducted telephone interviews of two jurors and two alternates who sat during the first trial. The telephone interviews occurred a year and a half after the first trial had ended and were conducted by attorneys who replaced the original trial counsel.

According to the affidavit of Attorney Nancy Gertner, because she and co-counsel David Fine had not been trial counsel, they believed defendant's counsel had a considerable advantage in the upcoming trial.

(Gertner Affidavit at 2). To mitigate this perceived advantage, they independently decided to contact the jurors.

Mr. Fine placed the calls, assured each juror there was no obligation or pressure to speak to him, and ultimately discussed the case with two willing jurors and two alternates. According to Mr. Fine's affidavit, three of the four conversations were each five to ten minutes in length; the fourth was approximately fifteen to twenty minutes. (Fine Affidavit at 2). Mr. Fine submitted to the Court both his handwritten contemporaneous notes of these conversations as well as typed memoranda of them. On July 1, after defendant filed its motion to dismiss or to disqualify, the plaintiffs' counsel offered to share these notes with Raytheon, an offer which Raytheon declined.

Raytheon asserts that these juror interviews violated the Court of Appeals ruling in *United States v. Kepreos*, 759 F.2d 961 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985), which proscribes post-verdict contact with jurors. Defendant also claims that through these interviews Bushkin obtained an unfair advantage which jeopardizes the integrity of the retrial and the judicial system. Specifically, Raytheon claims that such information would be of critical use to plaintiffs in conducting voir dire, developing trial strategy, structuring examination of witnesses, and presenting evidence.

*Kepreos* involved an Assistant U.S. Attorney's post-verdict contact of a juror after a mistrial and before the retrial. Upon disclosure of this contact to the Court during day four of the second trial, defendant Kepreos moved for a mistrial, which the District Court denied.

On appeal, the First Circuit upheld the District Court's denial of a mistrial, but it enunciated a clearly articulated prospective rule regarding contact with jurors by attorneys.

We start with the proposition that henceforth this Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then

only in such extraordinary situations as are deemed appropriate. Permitting the unbridled interviewing of jurors could easily lead to their harassment, to the exploitation of their thought processes, and to diminished confidence in jury verdicts, as well as to unbalanced trial results depending unduly on the relative resources of the parties. *See United States v. Moten*, 582 F.2d 654, 665–67 (2d Cir.1978); *Miller v. United States*, 403 F.2d 77, 82 (2d Cir.1968); *Rakes v. United States*, 169 F.2d 739, 745–46 (4th Cir.), *cert. denied*, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948); *Commonwealth v. Fidler*, 377 Mass. 192, 202–03, 385 N.E.2d 513, 519–20 (1979). Such outcomes, or even the appearance of the same, we are not willing to tolerate. Thus, future incidents like the one described above will not be countenanced. 759 F.2d at 967.

The court in *Kepreos* also made it clear that the First Circuit concurred in the rationale of *Commonwealth v. Fidler*, 377 Mass. 192, 202–03, 385 N.E.2d 513, 519–20 (1979), a Massachusetts Supreme Judicial Court decision which required that any post-verdict interviews of jurors by counsel, litigants or their agents take place under the supervision and direction of the judge. The court in *Fidler* warned, "Any counsel or litigant who independently contacts jurors acts at his peril, lest he be held as acting in obstruction of the administration of justice . . .; [i]t is incumbent upon the Court to protect jurors from it." (quoting *Rakes v. United States*, 169 F.2d 739, 745 (4th Cir.), *cert denied*, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948)). The Supreme Judicial Court explicitly "decline[d] to permit unrestricted *post-trial* interviews . . ." *Id.* 377 Mass. at 202, 385 N.E.2d 513. (emphasis added).

Plaintiffs' attorneys argue that by its terms *Kepreos* applies only to *post-verdict* interviews of jurors by counsel, and not to the instant matter of a directed verdict. Here the jury did not hear the defendant's case or either party's closing arguments. The jury was not instructed by the court and never received the case. Plaintiffs further argue that an examination of the policies and precedents which guided the First

Circuit in *Kepreos* demonstrate that the interests giving rise to the *Kepreos* rule are implicated only when a jury has rendered a verdict or, at a minimum, begun actual deliberations regarding the case before it. (Plaintiffs' Memorandum in Opposition at 3). The Court rejects this argument.

This is a case of first impression in the respect that the *Kepreos* rule has never been applied to a jury such as that in *Bushkin* which never deliberated as a group. Nevertheless, the principle of *Kepreos* is not limited in its scope. *See United States v. Bailey*, 834 F.2d 218, 222 (1st Cir.1987), *appeal after remand*, 846 F.2d 1 (1st Cir.1988) (First Circuit expressly does not decide the precise scope of the *Kepreos* prohibition). The application of the *Kepreos* principle to this case is a logical extension.

At oral argument, plaintiffs' attorneys conceded that *Kepreos* would apply to a "hung jury" situation where no verdict had been returned, because in that instance the jurors would have begun their deliberations. Thus, the "post-verdict" aspect of the rule is not a crucial factor. In addition, this Court holds that formal jury deliberations are not required to activate the *Kepreos* rule.

The Court in *Kepreos* clearly identified the evils against which it sought to protect jurors:

> . . . [P]ermitting the unbridled interviews of jurors could lead to harassment of jurors, exploitation of jurors' thought processes, and diminished confidence in jury verdicts. *Kepreos*, 759 F.2d at 968, n. 5 (quoting *Commonwealth v. Fidler*) (citations omitted).

The "thought processes" of jurors begin from the opening of the trial, and it is the exploitation of those processes which *Kepreos* protects.

Furthermore, a potential for the evils of jury harassment and unbalanced trial results exists when the jury has been sworn and the trial begins, and not simply when the jury begins formal deliberations. Indeed, jury tampering often occurs before

any deliberations take place. An individual juror begins his or her own consideration of the case from its beginning. *Kepreos* protects each juror, not only the group during its formal deliberations.

An additional basis for this ruling is that the jurors in the first trial expressly declined to answer questions from both counsel, under Judge Skinner's supervision. Nevertheless, plaintiffs' current counsel chose to ignore the history of this case, and without consulting the Court or seeking clarification of Judge Skinner's statement, "That's the end of it" (Trial Tr. Day Nine at 9–36), they proceeded to conduct juror interviews without the knowledge or consent of the Court or opposing counsel.

Finally, as plaintiffs' counsel correctly notes, there is no precedent for applying the remedy of disqualification for this violation. In *Kepreos* the one remedy which the court considered was dismissal of a criminal indictment. The Court declined to impose such a remedy upon the government, however, because it was unclear whether *Fidler* applied to federal prosecutors at that time. 759 F.2d at 968, n. 5. In light of *Kepreos*, however, it should be obvious to attorneys who practice in federal court that *Kepreos* clearly incorporates *Fidler*, and imposes an additional requirement on attorneys, beyond that of Massachusetts Supreme Judicial Court Rule 3:07, Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, DR 7-108(D),[1] Communication with or Investigation of Jurors.

In imposing this remedy, the Court seriously considered its effects upon Plaintiff Bushkin. For that reason, the Court rejected an option of dismissal.

While recognizing the burden which this decision imposes, the Court is also aware of its obligation to establish limits on the unbridled interviewing of jurors. The prohibition of *Kepreos*, designed to preserve the integrity of the jury system, is clear. Attorneys Fine and Gertner violated this prohibition at their peril and must bear the consequences. For these reasons, the Court orders the disqualification of plaintiffs' counsel.

## ON MOTION TO RECONSIDER

Plaintiffs have moved the Court to reconsider its Order of July 5, 1988, disqualifying plaintiffs' counsel in this case. After hearing on reconsideration, the Court rules that its Order of July 5, 1988 is to remain in effect.

The jury system is the keystone of our legal system and its integrity is essential to the maintenance of the respect and confidence the public holds for our jurisprudence. The prohibition of *Kepreos* is designed to preserve this integrity. *See United States v. Kepreos,* 759 F.2d 961 (1st Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985). That prohibition was clear. Attorneys Gertner and Fine violated it and an appropriate remedy must be imposed. Disqualification from representing plaintiffs in this case is a fitting remedy, as it interdicts the attorneys' utilization in the second trial of any information gleaned as a result of their exploitation of the jurors' thought processes. Analogous to the remedy of suppression of the fruits of an illegal search, disqualification "suppresses" the use of the jurors' thought processes now in the attorneys' minds and ready for their advantage at the second trial.

The Court rejects plaintiffs' argument that the Court should fashion the remedy by ordering defendant's attorneys to have the same access to the jurors as was had by plaintiffs' attorneys to ensure that both parties had "equal playing conditions." Such an action would violate the very poli-

---

1. DR 7-108(D) states that,

    After discharge of the jury from further consideration of a case with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service.

The United States District Court for the District of Massachusetts Local Rule 5(d)(4)(B) adopts as its guide for professional conduct the ethical requirements and rules concerning the practice of law adopted by the Supreme Judicial Court of Massachusetts.

cy which the *Kepreos* prohibition was designed to protect, as it would exacerbate the exploitation of the jurors' thought processes. Access to the jurors would also emasculate the deterrent effect of the prohibition, for it would signal that if one happened to be caught, the only penalty would be to require the violator to share the fruits of his misconduct with opposing counsel.

 Defendant has also moved the Court to reconsider its Order of July 5, 1988, renewing its motion to dismiss the complaint on the additional ground that Attorney Gertner made extrajudicial statements to the news media in violation of Supreme Judicial Court Rule 3:07 DR 7–107(G). On the very date the trial of this case was scheduled to begin, the Boston Globe published an article entitled "Raytheon-Beech trial saga drones on," in which Attorney Gertner was quoted. At oral argument Attorney Gertner admitted that she had spoken to the journalist who had written the article. The Court declines to dismiss the case, as any prejudice to defendant caused by this publication can be eradicated on voir dire. It appears to the Court, however, that Attorney Gertner was attempting to influence the jury panel by extrajudicial tactics not countenanced by norms of professional conduct.