**In re BUSHKIN ASSOCIATES, INC., and Merle J. Bushkin, Petitioners.**

No. 88–1812.

United States Court of Appeals, First Circuit.

Heard Nov. 1, 1988.

Decided Jan. 4, 1989.

Nancy Gertner with whom David J. Fine, Silverglate, Gertner, Fine & Good, Boston, Mass., Warren Asher and Jonathan Handel, were on Petition for Writ of Mandamus.

Max Stern, Harry C. Mezer, P.C. and Judith H. Mizner, Boston; Mass., on brief, for Nat. Network for the Right to Counsel, amicus curiae.

Thomas C. Frongillo with whom Edward I. Masterman, Mary E. O'Neal and Cargill, Masterman & Culbert, Boston, Mass., were on brief, for respondent Raytheon Co.

Before BOWNES, BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Merle J. Bushkin and Bushkin Associates, Inc. petition for mandamus, seeking to convince us to overturn a ruling of the United States District Court for the District of Massachusetts disqualifying their counsel in a pending civil action. We are not persuaded.

## I. SETTING THE STAGE

Petitioners are investment bankers. In 1981, they sued Raytheon Co. in federal district court for compensation allegedly owed. The case was tried in late 1985. After plaintiffs rested, Judge Skinner directed a verdict against them. Before court adjourned, plaintiffs' trial counsel asked for leave to question the jurors about their impressions of the evidence. Although defendant's lawyers did not object, the jurors themselves indicated a preference not to answer questions. No inquiry was allowed.

Undaunted by adversity, plaintiffs jettisoned their trial counsel and retained the firm of Silverglate, Gertner, Fine & Good (SGF & G). The effort proved successful; on appeal, we judged the evidence sufficient to reach the jury. *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142, 145–51 (1st Cir.1987). The case was thereafter assigned, in the usual course, to a new trier (Harrington, J.). Both sides girded for resumption of the battle.

In June 1988, during settlement negotiations, Raytheon's lawyers learned that attorneys from SGF & G had surreptitiously conducted telephone interviews with four members of the original venire (two jurors, two alternates). The activity was undertaken unilaterally; no advance permission was sought from the court and no contemporaneous disclosure was made to opposing counsel. Defendant claimed misconduct and moved to dismiss the case or in the alternative to disqualify SGF & G from further participation. Its motion was premised on the theory that such ex parte contact with erstwhile jurors transgressed the prophylactic rule set forth in *United States v. Kepreos*, 759 F.2d 961, 967–68 &

n. 5 (1st Cir.), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

The district court agreed that counsel's tactics were proscribed by *Kepreos* and entered a disqualification order. *Bushkin Associates, Inc. v. Raytheon Co.,* 121 F.R. D. 5, 8 (D.Mass.1988). The judge opined:

> While recognizing the burden which this decision imposes, the Court is also aware of its obligation to establish limits on the unbridled interviewing of jurors.... Attorneys [from SGF & G] violated this prohibition [of *Kepreos*] at their peril and must bear the consequences....
>
> ...Disqualification from representing plaintiffs in this case is a fitting remedy, as it interdicts the attorneys' utilization in the second trial of any information gleaned as a result of their exploitation of the jurors' thought processes.

*Id.* Stripped of the legal representation of their choice, plaintiffs now seek to employ the All Writs Act, 28 U.S.C. § 1651(a) (1982), to reverse what they consider a wrongheaded, or at the least too procrustean, decision.

## II. DISCUSSION ANENT THE PETITION

█ The Supreme Court has expressly forbidden interlocutory appeals of disqualification orders. *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 440, 105 S.Ct. 2757, 2765, 86 L.Ed.2d 340 (1985) (disqualification orders in civil cases not subject to immediate appeal under 28 U.S.C. § 1291); *Flanagan v. United States,* 465 U.S. 259, 270, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984) (disqualification orders in criminal cases fail to satisfy conditions for interim appealability); *cf. Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981) (order refusing to disqualify counsel in civil action reviewable on appeal after final judgment). While these opinions do not bar mandamus challenges to disqualification orders in so many words, their import is clear. The common strands which weave their way through the *Koller/Flanagan/Risjord* trilogy strongly suggest that, in the great majority of instances, mandamus would be utterly inappropriate. We explicate briefly.

"Mandamus entreaties are generally subject to a pair of prophylactic rules, which together require that a petitioner show (a) some special risk of irreparable harm, and (b) clear entitlement to the relief requested." *In re Recticel Foam Corp.,* 859 F.2d 1000, 1005 (1st Cir.1988) (footnote omitted); *see generally In re Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17, 20 (1st Cir.1982); *Acton Corp. v. Borden, Inc.,* 670 F.2d 377, 382 (1st Cir.1982). Given the Supreme Court's formulation of the appealability equation, disqualification orders plainly do not meet the first of these requirements, and the particular removal order which the present plaintiffs protest meets neither criterion. Nor is there any supervening public importance sufficient to bring "advisory mandamus" into play.

### A. *Special Risk of Irreparable Harm.*

It is hornbook law that a party who yearns for the nectar of mandamus must be unable otherwise to slake his thirst. Mandamus will not lie if a suitor possesses "other adequate means to attain the relief he desires...." *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam); *see also Recticel,* 859 F.2d at 1005 (same; quoting *Allied Chemical* and collecting cases); *United States v. Sorren,* 605 F.2d 1211, 1215 (1st Cir.1979) (mandamus appropriate only when petitioner "has no adequate remedy by appeal"). Since most interlocutory orders are fully reviewable on direct appeal after final judgment, litigants have ready alternate means of obtaining relief from such orders, absent exceptional circumstances. For this reason, resort to the writ will "rarely, if ever" be justified. *Allied Chemical,* 449 U.S. at 36, 101 S.Ct. at 190. To obtain early review via mandamus, the party "attack[ing] such an order must ordinarily demonstrate that something about the order, or its circumstances, would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk." *Recticel,* 859 F.2d at 1005–06.

Plaintiffs' demonstration, we think, falls well shy of this rigorous mark. They tell us that, unless the disqualification order is vacated now, disposition of their case—which has already been much delayed—will be prorogued yet again whilst they shop for successor counsel and familiarize him or her with the voluminous record. Plaintiffs also cite the extra expense which such a course of action would entail. Though we are not unsympathetic with petitioners' plight, these factors do not mount up to the "special risk of irreparable harm," *id.* at 1005, which the caselaw demands.

The Supreme Court has clearly pointed the way, stating that: "Nothing about a disqualification order distinguishes it from the run of pretrial judicial decisions that affect the rights of [litigants] yet must await completion of trial court proceedings for review." *Flanagan,* 465 U.S. at 270, 104 S.Ct. at 1051. Because a disqualification order "will rarely, if ever, represent a final rejection of a claim of fundamental right that cannot effectively be reviewed following judgment on the merits," the remedy of vacating the final judgment and remanding for a new trial "seems plainly adequate should petitioner's concerns of possible injury ultimately prove well-founded." *Risjord,* 449 U.S. at 377–78, 101 S.Ct. at 675. Therefore, disqualification orders "can be reviewed as effectively on appeal of a final judgment as on an interlocutory appeal." *Koller,* 472 U.S. at 438, 105 S.Ct. at 2765.

In *Koller,* the Justices explicitly considered and rejected claims of prejudice akin to those voiced here. While conceding that enforced changes of counsel inevitably cause delay, the *Koller* Court blunted the thrust of that circumstance, observing that delay also "inherently accompanies time-consuming interlocutory appeals." *Id.* at 434, 105 S.Ct. at 2762. Noting that "[m]ost pretrial orders of district judges are ultimately affirmed by appellate courts," Justice O'Connor concluded: "We do not think that the delay resulting from the occasion-

ally erroneous disqualification outweighs the delay that would result from allowing piecemeal appeal of every order disqualifying counsel." *Id.* Put another way, "the possibility that a [disqualification] ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement imposed by Congress." *Id.* at 436, 105 S.Ct. at 2764.

In light of the Court's conclusion that appellate oversight of disqualification orders can satisfactorily be performed in the ordinary course of appeal from final judgment, we would be hard-pressed to find some cognizable risk of irreparable harm in this case. Indeed, bearing in mind the Court's pronouncements anent the efficacy of an end-of-case appeal in this type of situation, and its holding that the incremental delay-cum-expense resulting from disqualification is insufficient to justify intermediate review, we would make a mockery of the *Koller/Flanagan/Risjord* trilogy were we to rule that the very same sort of injuries, when alleged by these plaintiffs, are irremediable after final judgment.[1] Respect for the clearly-expressed views of the Court leaves us no principled alternative but to hold that petitioners have failed to show any "special" risk of harm. *Accord In re Ford Motor Co.,* 751 F.2d 274, 275 (8th Cir.1984) (because denial of motion to disqualify counsel is effectively reviewable on direct appeal after final judgment, it "will rarely justify the issuance of a writ of mandamus").

### B. *Clear Entitlement to Relief.*

Petitioners fare no better on the second furculum of the test. Typically, applicants must establish a right to the writ that is "clear and indisputable." *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting *United States v. Duell,* 172 U.S. 576, 582, 19 U.S. 286, 287, 43 L.Ed. 559 (1899)); *In re Insurers Syndicate,*

---

1. Our own cases also suggest that expense, inconvenience, and delay of the sort which petitioners allege are not enough to merit relief under section 1651(a). We have repeatedly re-

jected "the general burdensomeness of litigation as a basis for assuming mandamus jurisdiction." *Recticel,* 859 F.2d at 1006 n. 5 (quoting *In re Justices,* 695 F.2d at 20).

864 F.2d 208, 211 (1st Cir.1988). In this case, the asserted "right" is blurred in two aspects.

1. *The Reach of Kepreos.* In *United States v. Kepreos,* we announced a prohibition against "the post-verdict interview[ing] of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate." 759 F.2d at 967. Plaintiffs contend that *Kepreos* was never intended to embrace a situation like this one, where the trial court directed a verdict and dismissed the panel before jury deliberation had begun. Yet the matter is far from clearcut and the arguments for applying the *Kepreos* rule are fairly powerful: the jury contact in *Kepreos* itself occurred after a mistrial, *id.* at 963, and the reference to "post-verdict interview[ing]," *id.* at 967, might well include verdicts instructed by the court.

That is, however, hardly the pivotal point. Giving petitioners the benefit of all doubt, the applicability of *Kepreos* remains at least fairly debatable. Certainly, SGF & G's entitlement to conduct unsupervised, undisclosed jury interviews was never, to use the talismanic phrase, "clear and indisputable." Even if Judge Harrington miscalculated in extending *Kepreos* to the circumstances at bar—a matter as to which we offer no view—a showing of legal error sufficient to win reversal on direct appeal, without more, does not warrant resort to mandamus. *E.g., Schlagenhauf v. Holder,* 379 U.S. 104, 112, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964); *Parr v. United States,* 351 U.S. 513, 520–21, 76 S.Ct. 912, 917–18, 100 L.Ed. 1377 (1956). Were the law otherwise, the writ would become so freely available as to "undermine the settled limitations upon the power of an appellate court to review interlocutory orders." *Allied Chemical,* 449 U.S. at 35, 101 S.Ct. at 190 (quoting *Will v. United States,* 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967)); *see also Risjord,* 449 U.S. at 378, 101 S.Ct. at 675 (interlocutory rulings "are not appealable 'on the mere ground that they may be erroneous' ") (citation omitted).

2. *The Effect of Discretion.* Plaintiffs' claim is less than "clear and indisputable" in a second aspect as well. Because of the very nature of the requisite showing— "clear entitlement to the relief requested," *Recticel,* 859 F.2d at 1005 (footnote omitted)—mandamus is generally thought an inappropriate prism through which to inspect exercises of judicial discretion. *See Allied Chemical,* 449 U.S. at 36, 101 S.Ct. at 190; *Insurers Syndicate,* 864 F.2d at 211; *Recticel,* 859 F.2d at 1006. For us to intrude in such precincts by way of 28 U.S.C. § 1651(a), the lower court must either have acted "clearly without jurisdiction," *Sorren,* 605 F.2d at 1215, or have abused its discretion to such an extreme and injurious degree that its actions comprise "a judicial usurpation of power." *Allied Chemical,* 449 U.S. at 35, 101 S.Ct. at 190; *see also Ramirez v. Rivera–Dueno,* 861 F.2d 328, 334 (1st Cir.1988); *Recticel,* 859 F.2d at 1006.

To err is human, and judges—trial and appellate alike—are not infallible. Yet the ordinary mistakes which may attend exercises of discretion are not grist for the mandamus mill. The writ is reserved for extraordinary cases; its "currency is not profligately to be spent." *Boreri v. Fiat S.p.A.,* 763 F.2d 17, 26 (1st Cir.1985). Mandamus cannot be allowed to become a handy substitute for an otherwise-unavailable interlocutory appeal. Thus, notwithstanding that judgment calls by the district court may be fraught with significance for the litigants, mandamus does not lie to control run-of-mine misuses of judicial discretion. "A writ of mandamus [should] not issue when all that is shown is that the district court abused its discretion when making the challenged ruling." *In re Beard,* 811 F.2d 818, 826 (4th Cir.1987).

This tenet, we suggest, is virtually dispositive of the point. Since we have no cognizable basis to review, here and now, the lower court's ruling that *Kepreos* was trammelled, the question reduces to the judge's choice of a sanction in response to the violation. He elected to eject the offenders—the SGF & G team—from the case. That decision, right or wrong, was a

discretionary one. *See In re Grand Jury Proceedings,* 859 F.2d 1021, 1024 (1st Cir. 1988) (inquiry on challenge to disqualification is whether district court abused its "concededly wide discretion"); *Kevlik v. Goldstein,* 724 F.2d 844, 847 (1st Cir.1984) (disqualification of counsel reviewable under abuse-of-discretion standard); *International Business Machines Corp. v. Levin,* 579 F.2d 271, 279 (3d Cir.1978) ("in its order of disqualification the court has a wide discretion in framing its sanctions so as to be just and fair to all parties involved"); *cf. Wheat v. United States,* — U.S. —, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) (where disqualification sought for conflict of interest, district judges "must be allowed substantial latitude" in deciding the point).

Inevitably, the decision to disqualify an attorney—whether as a sanction, or for perceived conflict of interest, or otherwise—involves the balancing and weighing of imponderables. It may be necessary, for instance, to assess the degree to which a lawyer's presence might taint the trial, *see Fiandaca v. Cunningham,* 827 F.2d 825, 831 (1st Cir.1987); *Board of Education v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); the court's need to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession, *see United States v. Agosto,* 675 F.2d 965, 969 (8th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982); *Levin,* 579 F.2d at 283; the litigants' interest in retaining counsel of their choosing, *see In re Grand Jury,* 859 F.2d at 1023; *Agosto,* 675 F.2d at 969; *Levin,* 579 F.2d at 283; and the availability and relative efficiency of other sanctions, *see Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982); *Nyquist,* 590 F.2d at 1246. *Cf. Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 655–56 & nn. 19–21, 98 L.Ed.2d 798 (1988) (discussing mix of factors to be considered preliminary to use of preclusory sanction); *United States v. Pole No. 3172,* 852 F.2d 636, 641 (1st Cir.1988) (discussing choice of sanctions under Fed.R.Civ.P. 37).

Disqualification is almost never cut-and-dried; rather, as the Court has recognized, the "decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand...." *Risjord,* 449 U.S. at 377, 101 S.Ct. at 675. Because the district judge is on the front lines, with the smoke of battle pungent in his nostrils, he must be given considerable latitude in matching a condign sanction to counsel's breach of obligation. *Cf. Koller,* 472 U.S. at 436, 105 S.Ct. at 2763 (implicit in the overall ban on intermediate appeals "is Congress' judgment that the *district judge* has primary responsibility to police the prejudgment tactics of litigants, and that the district judge can better exercise that responsibility if the appellate courts do not repeatedly intervene to second-guess prejudgment rulings") (emphasis in original).

This case shows no lack of attention to the careful balancing which must be undertaken in regard to disqualification motions. Confronted with a perceived infraction—ex parte contact with former jurors in contravention of *Kepreos*—Judge Harrington took pains to select what he believed to be a fitting response. *See Bushkin Associates, Inc. v. Raytheon Co.,* 121 F.R.D. at 8–9. The judge considered, and rejected, the harshest available sanction: dismissal. *Id.* at 8. He took account of plaintiffs' legitimate interests, *id.;* emphasized the need to cleanse the upcoming trial of any taint stemming from the misconduct, *id.;* and articulated the desirability of sending a "signal" to deter future misconduct, *id.* at 9. Because the choice of a suitable sanction was a matter well within the trial court's jurisdiction, and because the impost selected, though severe, was not so grossly disproportionate as to vault the towering barrier blocking intermediate review of discretionary rulings, mandamus will not lie. Sanction decisions, after all, are "primarily for the district court, not this court." *Benitez–Allende v. Alcan Aluminio Do Brasil, S.A.,* 857 F.2d 26, 33 (1st Cir.1988) (involving Fed.R.Civ.P. 37(b)(2)).

### C. *Advisory Mandamus.*

■ Apart from the more traditional bases for mandamus jurisdiction, there is

an occasional instance where, notwithstanding the interlocutory nature of a ruling, it may be appropriate to utilize the sweep of 28 U.S.C. § 1651(a) to grapple with issues of compelling public importance. *Insurers Syndicate*, 864 F.2d at 212 n. 5; *In re Justices*, 695 F.2d at 25; *Sorren*, 605 F.2d at 1215–16; *In re Ellsberg*, 446 F.2d 954, 956–57 (1st Cir.1971); *see generally* Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 Harv.L.Rev. 595, 613–19 (1973). We have termed this rarely-used procedure "advisory mandamus." *Recticel*, 859 F.2d at 1005 n. 4. Despite plaintiffs' imprecations, we do not think that this case is a suitable candidate for such singular treatment.

The important legal question involved, petitioners urge, is the breadth of the *Kepreos* prohibition. *See Kepreos*, 759 F.2d at 967–68 & n. 5. To be sure, the reach of *Kepreos* has not been punctiliously charted. *See United States v. Bailey*, 834 F.2d 218, 222 n. 4 (1st Cir.1987) (leaving open "precise scope of the *Kepreos* prohibition"). Even so, proper occasions for employing advisory mandamus are hen's-teeth rare: it is reserved for blockbuster issues, not merely interesting ones. We agree with the District of Columbia Circuit that advisory mandamus should primarily be employed to address questions "likely of significant repetition prior to effective review," so that our opinion would assist other jurists, parties, or lawyers. *National Right to Work Legal Defense and Education Foundation v. Richey*, 510 F.2d 1239, 1244 (D.C.Cir.) (per curiam), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975). This is not such a case.

The matter before us presents an idiosyncratic set of circumstances, not likely soon to recur. The record is spotty; there are, for example, strenuously-argued disputes, unresolved in the court papers, as to (1) whether counsel's actions were undertaken in a sincere (if mistaken) belief that *Kepreos* was inapposite, or in deliberate bad faith; and (2) the amount of information actually garnered through juror interviews, and its utility. Given the peculiar posture of the litigation, we do not believe

that a sufficiently valid institutional purpose would be served by yielding to the entreaty that we grant premature review.

In our judgment, this result is reinforced by recognition of the strict limits which the Court has placed on immediate appealability of interlocutory disqualification orders. *See Koller, supra; Flanagan, supra; Risjord, supra*. It seems fitting that, in deference to the rationale of these cases, we should similarly constrain our mandamus power. Agreeing to entertain advisory mandamus in this instance would flout the well-reasoned jurisdictional curbs erected by the *Koller/Flanagan/Risjord* trilogy.

We find no compelling reason, therefore, to depart from our usual praxis, or slight the Court's precedents, by straining to reach the merits of plaintiffs' grievance. As *Sorren* instructs: "Invocation of our advisory mandamus power is not to be used as a bootstrap device to circumvent the limits on our jurisdiction to review discretionary interlocutory rulings of district judges." 605 F.2d at 1216.

## III. DISCUSSION ANENT THE COUNTERCLAIM

Raytheon moved to dismiss the mandamus petition, filed an answer to it, and docketed what was fancifully denominated as a "counterclaim." Raytheon described the burden of the counterclaim thusly:

> [The] counterclaim requests this Court to issue a writ of mandamus directing the district court to dismiss Bushkin's complaint due to Bushkin's counsel's bad faith violation of *United States v. Kepreos, ...* which has given Bushkin an irreversible unfair advantage, and has irreparably tainted any future trial of this case.

Respondent's Brief at 4–5. Howsoever inventively labelled, the counterclaim is an outright waste of our time.

 We will not tarry on this score, but we offer two pointed observations. In the first place, mandamus practice neither contemplates nor permits the filing of counterclaims. *See* Fed.R.App.P. 21. Second, even if we were to treat the counterclaim

as a cross-petition for mandamus, we would deny it out of hand. After all, the district judge's decision to reject dismissal in favor of disqualification as the sanction of choice, 121 F.R.D. at 8, was every bit as discretionary as the judge's selection of disqualification over some milder penalty. What is sauce for plaintiffs' goose is no less sauce for defendant's gander. Thus, for reasons already recited, mandamus will not lie to allow interlocutory review of the district court's declination to enter a dismissal order.

*The petition for mandamus is denied and dismissed. The respondent's "counterclaim" is treated as a cross-petition for mandamus and is likewise denied and dismissed.* All parties shall bear their own costs.