# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE ROBERTO COHEN,
                    *Petitioner,*

          v.

UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
CALIFORNIA,
                    *Respondent,*

LISA MILLER, NEW JERSEY
CARPENTERS PENSION AND ANNUITY
FUND, DOUGLAS DEPIES, PATRICK D.
JERMYN, ALEXANDER POLITZER,
HARMIK KAZANCHIAN, IBEW LOCAL
640/ARIZONA CHAPTER NECA
PENSION TRUST FUND, THE FRANKS
GROUP, CITY OF PONTIAC GENERAL
EMPLOYEES RETIREMENT SYSTEM,
NVIDIA CORP., JEN-HSUN HUANG
and MARVIN D. BURKETT.
                    *Real Parties in Interest.*

No. 09-70378

D.C. No.
08-CV-04260

OPINION

On Petition for Writ of Mandamus to the
United States District Court for the
Northern District of California.
D.C. No. 08-CV-04260.
James Ware, District Judge, Presiding

Argued and Submitted
September 1, 2009—San Francisco, California

Filed November 5, 2009

14909

Before: Betty B. Fletcher and Andrew J. Kleinfeld, Circuit Judges, and Kevin T. Duffy,* District Judge.

Opinion by Judge B. Fletcher

*The Honorable Kevin T. Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

## COUNSEL

Michael F. Ram, Levy, Ram & Ollson LLP, San Francisco, California and Kim E. Miller, Kahn Gauthier Swick, LLC, New York, New York, for the petitioner.

Jonathan K. Levine and Aaron M. Sheanin, Girard Gibbs LLP, San Francisco, California, and Ralph Stone and Thomas G. Ciarlone, Jr., Shalov Stone Bonner & Rocco LLP, New York, New York, for Real Parties in Interest Lisa Miller and the Depies Group.

## OPINION

B.  FLETCHER, Circuit Judge:

Petitioner Roberto Cohen petitions for a writ of mandamus vacating the district court's December 23, 2008, order to the extent that it appointed Girard Gibbs LLP as co-lead counsel and requiring the district court to appoint Kahn Gauthier Swick, LCC, as co-lead counsel. We grant the petition for a writ of mandamus in part and order the district court to vacate its order appointing Girard Gibbs LLP as co-lead counsel.

## FACTS AND PROCEDURAL BACKGROUND

This case presents the issue of whether the district court has authority to select lead counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.

The underlying litigation is a consolidated putative securities fraud class action brought by investors who purchased NVIDIA Corporation securities between November 8, 2007 and July 2, 2008. In September of 2008, Lisa Miller filed the first putative securities fraud class action against NVIDIA, which the district court consolidated with two other actions. The Complaint alleges, among other things, that NVIDIA fraudulently concealed from investors the use of flawed materials and processes in producing certain products, and that the stock price substantially declined following the disclosure of these facts.

Following consolidation, seven purported class members or groups of class members filed motions to be appointed lead plaintiff and for approval of their choice of lead counsel. Among these were Roberto Cohen, who selected Kahn Gauthier Swick, LLC ("KGS") as his choice for lead counsel; New Jersey Carpenters Pension and Annuity Funds ("New Jersey Carpenters"), which selected Milberg LLP as its choice for lead counsel; and a group consisting of Douglas Depies, Jerrold Engber, Geoffrey James, Chester Chow, and Kumaraswamy Krishnamurthy (collectively the "Depies Group") which selected Girard Gibbs LLP ("Girard Gibbs") and Shalov Stone Bonner & Rocco LLP as their choice for co-lead counsel.

The district court, in an order dated December 23, 2008, ("December Order") appointed lead plaintiff and lead counsel. The PSLRA creates a rebuttable presumption that the most adequate plaintiff—whom the court must appoint as the lead plaintiff—is the person or group that meets the following three requirements: "(a) has either filed the complaint or made a motion in response to the published notice; (b) in the determination of the court, has the largest financial interest in the relief sought by the class; and (c) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA further provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). After applying two separate methods to determine the plaintiff with the largest financial stake in the litigation, the court appointed Cohen and New Jersey Carpenters as co-lead plaintiffs. The district court appointed Milberg LLP and Girard Gibbs as co-lead counsel, finding "[u]pon review of each firm's resume, . . . [and] given each firm's experience with similar actions," these firms were "the most qualified counsel for this case."

On January 8, 2009, Cohen requested leave to file a motion for reconsideration of the court's December Order or, in the

alternative, application for an order certifying interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Cohen argued that the district court's appointment of Girard Gibbs, the Depies Group's choice for lead counsel, was contrary to the PSLRA and *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002), because it denied him his right, as lead plaintiff, to select counsel for the class. The Depies Group also submitted a motion for leave to file a motion for reconsideration and/or clarification of the December Order in which they argued 1) the district court should deny Cohen's motion and 2) if the district court authorized Cohen's motion for reconsideration it should authorize the Depies Group to challenge the appointment of lead plaintiff. In an order dated January 23, 2009 ("January Order"), the district court denied these motions. The district court found that "*In re Cavanaugh* does not specify the terms on which a court may refuse to approve a lead plaintiff's selection of counsel" and that "[u]nder the express language of the PSLRA, the Court has the discretion not to appoint a lead plaintiff's choice of counsel."

Cohen filed a petition for writ of mandamus seeking to vacate the December Order to the extent it appointed Girard Gibbs as co-lead counsel and to compel the district court to appoint KGS. The Real Parties in Interest Lisa Miller and the Depies Group filed a response opposing the petition and arguing that if the petition is granted the proper remedy is to remand to the district court with instructions to appoint the Depies Group as lead plaintiff.

## DISCUSSION

### I. Cohen's Petition for Writ of Mandamus

We have authority to issue a writ of mandamus under the "All Writs Act," 28 U.S.C. § 1651. However, "the remedy of mandamus is a drastic one . . . [and] only exceptional circumstances amounting to a judicial 'usurpation of power' will justify invocation of this extraordinary remedy." *Bauman v. U.S.*

*Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977) (quoting *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976)). Although we determine de novo whether the writ should issue, we must be firmly convinced that the district court has erred. *Valenzuela-Gonzalez v. U.S. Dist. Court*, 915 F.2d 1276, 1279 (9th Cir. 1990).

**[1]** We decide whether to issue the writ under the factors laid out in *Bauman*, analyzing whether (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief he or she desires; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's error is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of the first impression. *Bauman*, 557 F.2d at 654-55. No single *Bauman* factor is determinative in every case nor must all five factors be present to grant the writ. *Valenzuela-Gonzalez*, 915 F.2d at 1279.

## A.    The Bauman Factors

**[2]** We will begin by analyzing the district court's opinion for clear error, as this factor is "highly significant" and failure to show clear error may be dispositive of the petition. *Cole v. U.S. Dist. Court*, 366 F.3d 813, 820 (9th Cir. 2004); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1219-1220 (9th Cir. 2000). The clear error standard is significantly deferential and is not met unless the reviewing court is left with a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993); *see also DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 936 (9th Cir. 2000) (applying this standard of review to a district court's statutory interpretation).

**[3]** The Depies Group argues that the district court acted within its discretion because the PSLRA leaves the lead plaintiff's selection of counsel subject to the approval of the district court. They contend that the district court disapproved Cohen's selection of KGS and, because of that disapproval, and because the PSLRA does not explicitly provide procedures for the district court to follow after disapproving the lead plaintiff's choice of counsel, the district court acted within its authority by itself selecting class counsel. The district court appears to have relied on a similar justification for its decision in its January Order.[1] This argument is untenable. Although it cannot be contested that the district court had the authority to reject Cohen's choice of lead counsel, it does not follow that having done so it had the authority to select lead counsel of its own choosing. This argument misses the fundamental point that the PSLRA unambiguously assigns this authority to the lead plaintiff.

**[4]** When a statute speaks with clarity to an issue, courts must apply the clear meaning of the statute. *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992). We have already explained that the PSLRA's provisions on selection of lead plaintiff and lead counsel, although containing many requirements, are "neither overly complex nor ambiguous." *Cavanaugh*, 306 F.3d at 729. Here we address only the PSLRA's mandate that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). This provision clearly identifies the most adequate plaintiff as the actor that "select[s] and retain[s]" class counsel. Although this power is subject to court approval and is therefore not absolute, it plainly belongs to the lead plaintiff. *See id.*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 273, 277 (3d Cir. 2001) (holding that the PSLRA is clear that "the power to

---

[1]The rationale for the district court's decision is not entirely clear because, as explained below, the district court appears to have articulated a different explanation for appointing Girard Gibbs in its December Order.

'select and retain' lead counsel belongs . . . to the lead plaintiff, and the court's role is confined to deciding whether to 'approve' that choice" and that should the court disagree with the lead plaintiff's choice "it should clearly state why . . . and should direct the lead plaintiff to undertake an acceptable selection process").[2] The statute expressly provides that lead plaintiff has the power to select lead counsel, suggesting that the identity of the party selecting lead counsel was of substantial importance to Congress. *See* 15 U.S.C. § 78u-4(a)(3); *In re BankAmerica Corp. Secs. Litig.*, 350 F.3d 747, 751 (8th Cir. 2003); *Cendant*, 264 F.3d at 273. Nor does the statute, framed in mandatory language, designate any other actor as authorized to select lead counsel or suggest that the district court may appropriate this authority. It would be difficult for the statute to be more clear that it is the lead plaintiff who selects lead counsel, not the district court.

The clause subjecting the lead plaintiff's selection of counsel "to the approval of the district court" in no way suggests that a district court shares in the lead plaintiff's authority to select lead counsel or that disapproval of a lead plaintiff's choice divests the lead plaintiff of this authority. The ordinary reading of this clause merely gives the district court the limited power to accept or reject the lead plaintiff's selection. Given that the PSLRA indisputably assigns to the lead plaintiff the power to select lead counsel, it would be incongruous to conclude that this power shifts to the district court following disapproval of a lead plaintiff's selection of lead counsel. Instead, the opposite conclusion is compelled. The logical

---

[2]*Cendant* also said that a district court may have limited authority to conduct an "auction" to appoint lead counsel in the rare case that the lead plaintiff has selected inadequate counsel, is unable or unwilling to select adequate counsel, and no other suitable party exists to replace that lead plaintiff if disqualified. *See Cendant*, 264 F.3d at 277. In such a situation, a district court may need to take a more active role in the selection of lead counsel, although it is unclear exactly from whence this authority would derive in the statutory text. Regardless, we do not confront such facts in the current case.

interpretation of the statute's failure to provide an intricate procedure for the district court to follow after rejecting the lead plaintiff's selection is that the power to select lead counsel remains in the hands of the lead plaintiff. Any other result would allow the district court in all cases to reject lead counsel and then proceed to appoint its own choice.

The Depies Group's contention that the district court's decision was not clear error because no Ninth Circuit precedent squarely addresses this issue is easily disposed of. Even were we to agree with the Depies Group that *Cavanaugh* does not speak to the district court's authority to select lead counsel —at best a dubious proposition given that case's forceful rejections of district court authority to select lead counsel— the plain text of the statute prohibits the course taken by the district court. *See United States v. W. R. Grace*, 504 F.3d 745, 757-58 (9th Cir. 2007) (finding clear error based on plain text of statute); *DeGeorge*, 219 F.3d at 936; *see also Cavanaugh*, 306 F.3d at 740-41 (Wallace, J., concurring).

Although the issue before *Cavanaugh* was appointment of lead plaintiff, *Cavanaugh* repeatedly states that the district court lacks authority to select lead counsel. *See* 306 F.3d at 732-34. In addition, that decision certainly strongly implies that after disapproving a lead plaintiff's choice of counsel, the district court is not free to appoint counsel of its own choosing. *See id.* at 733 n.12 (explaining that the court should "ask [the plaintiff] whether he would be willing to serve as lead, even if the court were to disapprove his choice of counsel and *he were forced to seek the services of another attorney*") (emphasis added). We should not discount these statements simply because the precise issue in *Cavanaugh* was the selection of the lead plaintiff, not lead counsel. Much of *Cavanaugh*'s reasoning is directly premised on the PSLRA's mandate that the lead plaintiff, not the district court, selects lead counsel. *See, e.g., id.* at 734 ("Finally, allowing the district court to select the lead plaintiff based on its view of who has negotiated the most favorable fee schedule improperly

interferes with the lead plaintiff's authority and responsibility to select counsel."). A contrary holding here would not only fly in the face of the plain text of the statute, it would disregard much of *Cavanaugh*.

**[5]** The district court's decision to appoint Girard Gibbs was clearly erroneous. This error was a usurpation of power, pointing in favor of the issuance of the writ.

**[6]** We have little difficulty determining that the remaining *Bauman* factors are also met. With respect to the first and second factors, which are closely related, *United States v. Harper*, 729 F.2d 1216, 1222 (9th Cir. 1984), a lost choice of counsel cannot be adequately remedied through means other than mandamus and the resultant harm is not correctable on appeal. *See Cole*, 366 F.3d at 817, 820 (finding that the first factor is "affirmatively presented in the context of a disqualification of counsel" because it impairs the parties' right to counsel of their choice and this harm also satisfies the second factor); *Christensen v. U.S. Dist. Court*, 844 F.2d 694, 697 (9th Cir. 1988); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 438 (1985) (noting that orders disqualifying counsel in civil cases are not collateral orders subject to immediate appeal). Indeed, the deprivation of the right to select lead counsel was precisely the harm identified in *Cavanaugh*.[3] *See* 306 F.3d at 740 (Wallace, J., concurring); *see also id.* at 734. The fourth and fifth *Bauman* factors are also met. *See Valenzuela-Gonzalez*, 915 F.2d at 1279 ("Mandamus is particularly appropriate when we are called upon to deter-

---

[3]The Depies Group argues that Cohen has suffered no harm because KGS still personally represents him and no attorney client relationship with Girard Gibbs has been foisted on him given that Girard Gibb's role as lead counsel is to represent the class as a whole. These arguments are beside the point: as lead plaintiff, Cohen has the statutory right to select class counsel, not merely to hire counsel to separately monitor the litigation. Moreover, Cohen's lack of relationship with Girard Gibbs does not mitigate the harm the district court's order causes him; rather, it illustrates that harm.

mine the construction of a federal procedural rule in a new context. Such a situation presents the rare case where both the fourth and fifth *Bauman* factors are satisfied: we are presented with a novel question of law that is simultaneously likely to be 'oft-repeated.' " (citations omitted)). The application of the PSLRA, particularly the district court's authority to select lead counsel, will be raised in future cases, and has previously been implicated by district court opinions holding that the court has authority to conduct "auctions" for lead counsel. *See, e.g.*, *In re Quintus Secs. Litig.*, 201 F.R.D. 475, 486 (N.D. Cal 2001); *see also Cendant*, 264 F.3d at 258 n.35 (noting that the court had found eight securities litigation cases governed by the PSLRA employing auctions).

## B. Appointing Lead Counsel

**[7]** Cohen requests that we remand to the district court with instructions to appoint KGS as lead counsel. He suggests that because the district court considered his choice of counsel in deciding to select him co-lead plaintiff and found that KGS was free from conflict and would vigorously prosecute the action, this ends the district court's inquiry into the adequacy of counsel.[4] We think that would go too far. The court concluded that Cohen should be lead plaintiff, but acted under the misapprehension that it was the district court's role and not the lead plaintiff's role to choose lead counsel. Now that our

---

[4]Although none of the parties raise the issue, the district court may have erred in appointing "co-lead plaintiffs," a practice occasionally employed by district courts. *See, e.g.*, *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1070 (C.D. Cal. 1999) (appointing an individual and city as lead plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y. 1998) (appointing three co-lead plaintiffs). While the PSLRA allows a group to serve as lead plaintiff, it also consistently refers to the lead plaintiff and most adequate plaintiff in the singular, suggesting that the district court should appoint only one lead plaintiff, whether an individual or a group. *See* 15 U.S.C. § 78u-4(a)(3); *see also Cendant*, 264 F.3d at 223 n.3. The appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff. *See Cavanaugh*, 306 F.3d at 730-31.

mandate will assure that Cohen chooses lead counsel, it is for the district court to approve or disapprove Cohen's choice of lead counsel subject to appropriate criteria.

**[8]** Consistent with congressional intent in enacting the PSLRA to vest authority for selecting class counsel in the lead plaintiff and our reasoning in *Cavanaugh*, the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently. *See* 306 F.3d at 732, 734 & n.14 (explaining that selection of lead counsel "is not a beauty contest," that selection of counsel is an "important client prerogative," and that a contrary rule would "eviscerate" the PSLRA's assumption that the lead plaintiff is as or more capable than the court to select class counsel) (quoting *Cendant*, 264 F.3d at 276). Rather, like the Third Circuit, we hold that if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice. *See Cendant*, 264 F.3d at 276 (enumerating factors to consider in conducting this inquiry, including the lead plaintiff's sophistication and experience, the process through which the lead plaintiff selected its candidates for and final choice of lead counsel, the qualifications and experience of selected counsel, and evidence of arms-length negotiations between lead plaintiff and proposed counsel); *see also* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734 (suggesting that the district court's authority to disapprove lead counsel should be exercised when necessary to protect the interests of the class). In the event that the district court determines the lead plaintiff has not made a reasonable choice of counsel, the court should articulate its reasons for disapproving plaintiff's choice and provide an opportunity for lead plaintiff to select acceptable counsel. *See Cendant*, 264 F.3d at 277; *cf. Cavanaugh*, 306 F.3d at 733 n.12.

The district court issued conflicting rationales for its decision to appoint Girard Gibbs co-lead counsel, leaving it unclear whether the court was disapproving Cohen's choice of

KGS as inadequate or whether it merely found Girard Gibbs to be a better choice. *Compare* December Order (explaining that the district court had "review[ed] each firm's resume" and decided Girard Gibbs was "the most qualified counsel" without any discussion of whether Cohen's choice was inadequate) *with* January Order (suggesting the district court disapproved of Cohen's choice of lead counsel). Regardless, even if the district court rejected KGS, it is not clear why it did so or whether the court applied appropriate deference to Cohen's choice. Rather than attempting to evaluate Cohen's choice of KGS on the limited record before us, we remand to the district court to consider, using appropriate deference, whether KGS was an unreasonable choice of lead counsel under the circumstances.

## II.   The Depies Group's Requested "Remedy"

**[9]** Having determined that the district court's decision to appoint Girard Gibbs was clear error justifying a writ of mandamus, we are confronted with the Depies Group's assertion that the proper remedy is to remand to the district court with instructions to reassess the appointment of lead plaintiff. We decline to consider the merits of whether the district court erred in refusing to appoint the Depies Group as lead plaintiff because it is outside the scope of the mandamus petition.

In its response to Cohen's petition for mandamus, the Depies Group raises the argument that the district court erred in appointing lead plaintiff. Cohen's petition in no way challenged the appointment of lead plaintiff. The Depies Group cite no authority that they may permissibly raise such an entirely distinct issue[5] in their response to Cohen's petition

---

[5]The Depies Group's assertion at oral argument that these issues are related because the district court may have "co-joined" the selection of Cohen as lead plaintiff with the selection of Girard Gibbs as lead counsel is entirely speculative and unsupported by the record. Regardless, even were this the case it would not excuse the Depies Group's failure to properly assert its challenge to Cohen's appointment as lead plaintiff.

and we are aware of none that so hold. *See* Fed R. App. Proc. 21; *cf. In re Buskin Assoc., Inc.*, 864 F.2d 241, 247-48 (1st Cir. 1989) (explaining that mandamus neither contemplates nor permits the filing of counterclaims). They also make no attempt to satisfy the *Bauman* factors or demonstrate that they are entitled to a writ of mandamus, despite our precedent that mandamus is the proper vehicle to challenge the appointment of lead plaintiff at this stage in the litigation absent certification of an interlocutory appeal. *See Cavanaugh*, 306 F.3d at 730, 739; *Z-Seven*, 231 F.3d at 1218-20. Rather, it appears that the Depies Group, by couching its arguments in terms of a "remedy," attempts to avoid the need to file a petition and the strict requirements for a writ of mandamus, and invites this court to disregard the same. We decline the invitation. *Cf. DeGeorge*, 219 F.3d at 935 (explaining that the strict rules governing mandamus prevent parties from "eviscerat[ing] the statutory scheme established by Congress to strictly circumscribe piecemeal appeal") (quotation omitted); *In re Bushkin*, 864 F.2d at 247-48.

## CONCLUSION

**[10]** Cohen's petition for writ of mandamus is granted to the extent it seeks to vacate the district court's order appointing Girard Gibbs. We remand to the district court to accept or reject Cohen's selection of KGS, applying the applicable standard.

**WRIT GRANTED IN PART.**