Kay **DOUGHTY, Massachusetts Commissioner of Insurance, etc., Plaintiff, Appellee,**

v.

**UNDERWRITERS AT LLOYD'S, LONDON, et al., Defendants, Appellants.**

**In re Derek Richard WALLIS, etc., et al., Petitioners.**

Nos. 93–1174, 93–1214.

United States Court of Appeals, First Circuit.

Heard Aug. 2, 1993.

Decided Oct. 18, 1993.

---

Mark A. Kreger, with whom Andrew Kochanowski, Robert A. Badgley, Lord, Bissell & Brook, Chicago, IL, Kenneth W. Erickson, Matthew M. Burke, and Ropes & Gray, Boston, MA, were on brief, for appellants-petitioners.

Raymond J. Brassard, with whom Scott Harshbarger, Atty. Gen., Thomas A. Barnico, Asst. Atty. Gen., J. David Leslie, Stephen M. Voltz, and Rackemann, Sawyer & Brewster, P.C., Boston, MA, were on brief, for respondent-appellee.

Before SELYA, CYR and BOUDIN, Circuit Judges.

SELYA, Circuit Judge.

In this proceeding, we conclude that the district court's abstention-based remand order is not immediately appealable and that mandamus is not an appropriate alternative. Because this jurisdictional determination involves an issue on which the circuits are somewhat less than uniform, we take some pains to elucidate our rationale. We do not, however, reach the merits and, accordingly, leave a veritable hothouse of efflorescent questions to be plucked at another time and in another forum.

## I. BACKGROUND

The controversy that is before us finds its genesis in a beguilingly simple question: "Who insures the insurers?" The question

arises in connection with American Mutual Liability Insurance Company (AMLICO), a Massachusetts-based firm, which entered into a series of reinsurance contracts over a period of more than three decades. When AMLICO began paying out huge sums to satisfy asbestos-related claims at the tail end of this period, its efforts to secure reimbursement from reinsurers bore no fruit. Unassisted, AMLICO could not stanch the financial hemorrhaging and sought protection under state insolvency laws. The Massachusetts Supreme Judicial Court ordered the firm liquidated, and, in due course, appointed respondent-appellee Kay Doughty, the Commonwealth's Commissioner of Insurance, as permanent receiver.

Doughty filed suit in state court to recover an estimated $15,000,000 in overdue reinsurance indemnities, as well as treble damages under the Massachusetts trade practices statute. *See* Mass.Gen.Laws ch. 93A, §§ 10, 11 (1984). She named as defendants a melange of entities alleged to have entered into reinsurance pacts, including the so-called London Market Companies and several underwriting syndicates at Lloyd's, London (collectively, "the Reinsurers").[1]

The Reinsurers did not relish the chance to settle accounts in a court of law. Citing agreements contained in some (but far from all) of the reinsurance contracts, they formally requested that AMLICO submit its claims to arbitration. Doughty declined the invitation. She asserted, among other things, that the call for arbitration came too late; that the Reinsurers had waived the benefit of any agreements to arbitrate; and that, in any event, the dispute as a whole did not qualify as arbitrable. At that point, the Reinsurers invoked 9 U.S.C. § 205 (1988)[2] and removed Doughty's suit to the United States District Court for the District of Massachusetts. Next, they filed motions to compel arbitration and, as an interim prophylactic, to stay proceedings pending the outcome of the arbitral process. Doughty objected to these motions and moved on sundry grounds for an order remanding the case to state court. The Reinsurers opposed this motion.

Concluding that principles of *Burford* abstention controlled, *see Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *see also Fragoso v. Lopez,* 991 F.2d 878, 882–83 (1st Cir.1993) (explicating scope, reach, and current status of *Burford* abstention), the district court overruled appellants' objection and granted the motion to remand. The court did not speak to the other reasons advanced in support of the motion. Moreover, consistent with its relinquishment of jurisdiction, the court left both the question of arbitrability and the related matter of a stay to the state tribunal.

This proceeding ensued. In it, the Reinsurers wear two hats, appearing as both appellants and petitioners; they appeal from the remand order while simultaneously seeking a writ of mandamus aimed at recalling it. We consolidated these two initiatives for briefing, oral argument, and decision.

1. In labelling the London Market Companies and the Underwriters at Lloyd's, collectively, as "the Reinsurers," we exclude for present purposes a number of domestic firms and certain other foreign-based insurance providers (*e.g.*, English & American Insurance Co. and St. Helens' Insurance Co.) named as defendants in Doughty's action. The appellation "London Market Companies" is itself a collective term describing a consortium of foreign-based insurance providers, including Excess Insurance Co.; General Reinsurance Co. (Amsterdam); General Reinsurance Syndicate; Anglo French Insurance Co. (as successor to Federation General Insurance Co.); British National Insurance Co.; Sovereign Marine & General Insurance Co.; Royal Scottish Insurance Co.; Swiss National Insurance Co.; Zurich Reinsurance (U.K.) (as successor to Turegum Insurance Co.); and Gan Minster Insurance Co. (as successor to Minster Insurance Co.). Fi-

nally, we note that the Lloyd's underwriting syndicates are identified in the notice of appeal and petition for mandamus only as "Derek Richard Wallis, for himself and those other Underwriters at Lloyd's, London."

2. This statute implements the Convention on the Recognition of Foreign Arbitral Awards (the "Convention"). It provides that, if "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding." Under 9 U.S.C. § 202, the arbitration agreements here at issue arguably come within the Convention's grasp because, if the agreements exist and remain in effect, at least one party to each such agreement is a foreign entity.

## II. THE APPEAL

We begin our inquiry into the appeal by addressing the question of appellate jurisdiction for, if no jurisdiction attaches, the appeal founders. *See In re Recticel Foam Corp.,* 859 F.2d 1000, 1002 (1st Cir.1988). Here, two hurdles block the jurisdictional path: the statutory bar to appellate review of remand orders, *see* 28 U.S.C. § 1447(d) (1988), and the bedrock requirement that jurisdiction can never be assumed but must be premised on some affirmative source. *See, e.g., Massachusetts v. V & M Management, Inc.,* 929 F.2d 830, 833 (1st Cir.1991) (per curiam). We trace the dimensions of each hurdle and, in the process, consider appellants' hurdle-clearing capability.

### A. *The Statutory Bar.*

█ 28 U.S.C. § 1447(d) provides that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." Although this statute prohibits appellate review of remand orders "whether erroneous or not and whether review is sought by appeal or by extraordinary writ," *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 343, 96 S.Ct. 584, 589, 46 L.Ed.2d 542 (1976), the proscription is deeper than it is wide. Because courts must read section 1447(d) in *pari materia* with its statutory neighbor, 28 U.S.C. § 1447(c), *see Thermtron,* 423 U.S. at 353, 96 S.Ct. at 593, only remand orders issued under the authority of section 1447(c) are rendered unreviewable by the operation of section 1447(d), *see Garcia v. Island Program Designer, Inc.,* 4 F.3d 57, 58–59 (1st Cir.1993); *V & M Management,* 929 F.2d at 832–33. And, since section 1447(c), by its terms, is concerned exclusively with remands stemming from "defect[s] in removal procedure" such that "the district court lacks subject matter jurisdiction," it follows that section 1447(d) leaves open the possibility of appellate review in all cases that are remanded for reasons not covered by section 1447(c).

This is such an instance. Despite the fact that Doughty articulated several reasons for remanding the case, many of which implicated section 1447(c), the district court shunted these asseverations to one side and instead remanded exclusively on the basis of *Burford* abstention. Because abstention, by definition, assumes the existence of subject matter jurisdiction in the abstaining court—after all, one must have (or, at least, presume the presence of) subject matter jurisdiction in order to decline the exercise of it—section 1447(c) does not apply to an abstention-driven remand. *See Corcoran v. Ardra Ins. Co.,* 842 F.2d 31, 34 (2d Cir.1988). Hence, the statutory bar does not preclude us from reviewing the lower court's remand order.

### B. *Possible Sources of Appellate Jurisdiction.*

Our determination that 28 U.S.C. § 1447(d) does not operate to bar appellate review merely removes the first hurdle blocking the jurisdictional path. To pass the next hurdle, the Reinsurers must demonstrate the existence and applicability of some affirmative authority conferring jurisdiction on the courts of appeals to review remand orders of the sort at issue here. The Reinsurers try to clear this hurdle from three different angles. They urge that the remand order is appealable under 28 U.S.C. § 1291 (1988) (conferring jurisdiction on the courts of appeals to review "final decisions of the district courts"), or, alternatively, as a collateral order, *see Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), or, if all else fails, on the basis that the district court's rulings, taken in their totality, constitute a set of orders appealable under the Federal Arbitration Act. We find these exhortations unconvincing.

█ 1. *The Final Judgment Rule.* In respect to the suggestion that the remand order is appealable as a final judgment, the sockdolager is that the Supreme Court has said exactly the opposite:

> [B]ecause an order remanding a removed action does not represent a final judgment reviewable by appeal, the remedy in such a case is by mandamus to compel action, and not by writ of error to review what has been done.

*Thermtron,* 423 U.S. at 352–53, 96 S.Ct. at 594 (citation and internal quotation marks omitted).

The Reinsurers attempt to deflect the force of this blunt statement by suggesting that it should be regarded as dictum. They posit that, because the *Thermtron* Court found the remand order so egregious as to justify mandamus, no need to decide the availability of direct appellate review ever arose. In advancing this suggestion, the Reinsurers are whistling past the graveyard.

 "Dictum" is a term that judges and lawyers use to describe comments relevant, but not essential, to the disposition of legal questions pending before a court. *See Kastigar v. United States,* 406 U.S. 441, 454–55, 92 S.Ct. 1653, 1661–62, 32 L.Ed.2d 212 (1972); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 972 F.2d 453, 459 (1st Cir.1992); *United States v. Crawley,* 837 F.2d 291, 292–93 (7th Cir.1988). Given the familiar principle that "whatever may be done without the employment of [mandamus], may not be done with it," *Ex parte Rowland,* 104 U.S. 604, 617, 26 L.Ed. 861 (1882)); *see also Helstoski v. Meanor,* 442 U.S. 500, 505–08, 99 S.Ct. 2445, 2448–49, 61 L.Ed.2d 30 (1979), the Court's statement in *Thermtron* defies description as mere dictum. To the exact contrary, the mandamus remedy employed in *Thermtron* necessarily betokened, and, indeed, depended on, the Court's antecedent holding anent the unavailability of direct appellate review. Because deleting the challenged statement would have impaired the analytical foundation of the Court's ultimate decision to issue mandamus, that statement is properly categorized as part of the court's holding, not as dictum.[3]

 Still using the final judgment rule as their stepping stone, the Reinsurers make a second effort to boost themselves over the hurdle—an effort hinging on the assumption that *Thermtron* did not survive the Court's later decision in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This argument, too, is easily repelled. The short, dispositive answer to the argument is that this court only recently refused to follow those cases suggesting that *Cone* undermines *Thermtron,* and, instead, continued to apply *Thermtron*'s rule that remand orders are not final. *See Garcia,* 6 F.3d at 4–5. That ends the matter. It is black-letter law that, in a multi-panel circuit, newly constituted panels are, with few exceptions (none applicable here), bound by prior panel decisions closely in point. *See, e.g., United States v. Wogan,* 938 F.2d 1446, 1449 (1st Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991); *Jusino v. Zayas,* 875 F.2d 986, 993 (1st Cir.1989). Thus, principles of *stare decisis* require our allegiance to the *Thermtron* rule in this situation.

The slightly longer, but equally forceful, rebuttal is that there seem to be other good reasons counselling in favor of *Thermtron*'s continued vitality. In *Cone,* the Court held that a stay, issued in order to permit a related state case to proceed prior to the federal case, could be appealed as a final order. But, *Cone* makes no reference to *Thermtron*'s holding vis-a-vis remand orders, a circumstance which strongly suggests that the Court viewed the rules pertaining to remands and to stays, respectively, as separate and distinct. Moreover, the Supreme Court has continued to rely on *Thermtron* in the post-*Cone* era. *See, e.g., Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 347 & n. 4, 108 S.Ct. 614, 617 & n. 4, 98 L.Ed.2d 720

---

3. On this issue, all roads lead to Rome. Were we to assume, favorably to appellants, that the challenged statement did not comprise part of the Court's holding, we would nevertheless hew to it. Carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative. *See United States v. Santana,* 6 F.3d 1, 9 (1st Cir.1993); *McCoy v. Massachusetts Inst. of Technology,* 950 F.2d 13, 19 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). This truism is fortified here inasmuch as the rule that the Court's statement enunciates—that remand orders are not final judgments—has been adopted in a long string of circuit-level opinions. *See, e.g., Garcia,* 6 F.3d at 4–5; *Melahn v. Pennock Ins., Inc.,* 965 F.2d 1497, 1500 (8th Cir.1992); *V & M Management,* 929 F.2d at 833–34; *Corcoran,* 842 F.2d at 34; *Nasuti v. Scannell,* 792 F.2d 264, 267 (1st Cir.1986); *see also Milk 'N' More, Inc. v. Beavert,* 963 F.2d 1342, 1344 (10th Cir.1992); *McDermott Int'l v. Lloyds Underwriters,* 944 F.2d 1199, 1203 (5th Cir.1991).

(1988). Such continuing reliance indicates that *Thermtron* is still alive and well. Then, too, our reluctance to find that *Cone* implicitly overruled *Thermtron* is sharpened by the fact that *Thermtron*'s "language is rather absolute." *Garcia,* at 4. Where the Court has expressed a rule so clearly, inferior courts are entitled to expect equally blunt guidance should the Court wish to retract the rule or declare that it is no longer good law. *Cone* sends no such signal.

Lastly, and relatedly, *Thermtron* and *Cone,* scrutinized side by side, highlight certain differences between remand orders and stay orders. Whereas stay orders ordinarily signal a determination that there are federal interests at stake, sufficient ultimately to justify a hearing in federal court, remands, by definition, embody a determination that the cognizable federal interests, if any, when compared to the cognizable state interests, are so lacking in weight that the federal court either does not have, or should not appropriately exercise, jurisdiction. A remanded case's failure to pass a threshold test of this sort might possibly explain why a federal appeal as of right does not attach and the back-up remedy of mandamus is deemed adequate protection. Furthermore, remand orders typically involve a single case that a federal court returns to the state tribunal whence it emanated. Consequently, the litigation continues to progress, albeit in a state rather than a federal forum. In that sense, there is neither a permanent disposition of the case nor a disruption of its progress. A stay, on the other hand, typically involves two separate proceedings, say, one in a state court and one in a federal court. When the federal tribunal stays the latter pending the outcome of the former in state court, *res judicata* principles make that decision effectively final as to certain aspects of the federal case. *See Cone,* 460 U.S. at 10–13 & n. 11, 103 S.Ct. at 933–36 & n. 11. We think this finality helps to explain why the Court has permitted appeals to be taken from stay orders in situations where remand orders would not be appealable. *See In re Amoco Petroleum Additives Co.,* 964 F.2d 706, 712 (7th Cir.1992). And we think that this twist affords an added reason why, notwithstanding *Cone, Thermtron*'s holding that a re-mand order is not a final judgment remains intact.

■ *2. The Collateral Order Doctrine.* Next, the Reinsurers argue that the remand order, even if not a final judgment, may nonetheless be appealable under the collateral order doctrine. That doctrine carves out a "narrow exception to the normal application of the final judgment rule," *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989), limited to orders that (1) conclusively determine (2) important legal questions which are (3) completely separate from the merits of the underlying action and are (4) effectively unreviewable on appeal from a final judgment. *See Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 498, 109 S.Ct. 1976, 1978, 104 L.Ed.2d 548 (1989); *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26; *In re Insurers Syndicate, etc.,* 864 F.2d 208, 210 (1st Cir.1988). The Reinsurers contend that the district court's remand order meets these four preconditions.

Once outside the purview of 28 U.S.C. § 1447(d), *see supra* Part II(A), there is no absolute rule either prohibiting or permitting immediate appellate review of remand-related orders under the *Cohen* rubric. *Compare, e.g., Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,* 838 F.2d 656, 658–59 (2d Cir.1988) (permitting review of decision to remand based on interpretation of forum selection clause) *with, e.g., Corcoran v. Ardra Ins. Co.,* 842 F.2d at 35 (dismissing appeal of decision to remand based on *Burford* abstention). Rather, courts must apply the multi-pronged *Cohen* test to each remand order (or, at least, to each *type* of remand order) in an individualized, case-specific manner. *See, e.g., Garcia,* 6 F.3d at 4–5 (undertaking case-specific analysis). And, in determining whether a particular remand order falls within or without *Cohen*'s collateral order exception, courts must look to the general circumstances surrounding the order's issuance, including the reasons underlying it. *See Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1488–89 (2d Cir.1993); *Corcoran,* 842 F.2d at 35.

The remand order here at issue does not pass muster under *Cohen.* The salient legal question that stands separate and apart from the merits in this case—that is, the "collateral" issue—is whether the parties' overall dispute should be resolved in arbitration. The district court's ruling did not conclusively determine this issue. Instead, the district court's order set to rest only the preliminary question of which court should resolve the collateral issue. In other words, the collateral issue remains an open matter—a matter that the state court must yet decide. We agree with the Second Circuit that, to come within the collateral order rule, a decree must definitively resolve the merits of the collateral issue, not merely determine which court will thereafter resolve it. *See Corcoran,* 842 F.2d at 35; *see also Bennett v. Liberty Nat'l Fire Ins. Co.,* 968 F.2d 969, 970–71 (9th Cir.1992). Determining whether a state or federal court is to resolve an issue constitutes the definitive resolution of a collateral matter only when special circumstances exist, such as when the remand is pursuant to judicial interpretation of a forum-selection provision. *See Corcoran,* 842 F.2d at 35. That is not the case here. Hence, the order that the Reinsurers contest does not satisfy the first precondition to appealability under the *Cohen* doctrine.

The Reinsurers attempt to subvert this conclusion by redefining the collateral issue. They suggest that the question is not whether the underlying dispute should be resolved in arbitration, but, rather, whether a federal or state court is the proper forum for determining the dispute's arbitrability. We think this argument proves too much. Every remand order conclusively determines which court will thereafter determine the issues in controversy. Thus, appellants' approach could easily expand *Cohen* beyond the isthmian confines that the Court envisioned, *see Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225–26 (predicting that only a "small class" of cases would be affected by the doctrine), and thereby thwart the strong federal interest in precluding piecemeal appeals. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 471, 98 S.Ct. 2454, 2459, 57 L.Ed.2d 351 (1978); *Recticel,* 859 F.2d at 1003 & n. 3. At any rate, we are skeptical about permitting litigants to avoid *Cohen*'s first prong by the simple expedient of distilling issues to the smallest possible unit of measurement. We, therefore, decline to accept the Reinsurers' attempted reformulation of the collateral issue. *See generally Travelers Ins. Co. v. Keeling,* 996 F.2d at 1489 (refusing, in nearly identical circumstances, to redefine the issue in dispute); *Corcoran,* 842 F.2d at 35 (similar).

In all events, we conclude that, whatever way the collateral issue is defined, the remand order is not immediately appealable because it fails another element of the test. *Cohen* requires that the disputed issue represent "an important and unsettled question of controlling law, not merely a question of the proper exercise of the trial court's discretion." *Boreri v. Fiat S.p.A.,* 763 F.2d 17, 21 (1st Cir.1985); *accord Insurers Syndicate,* 864 F.2d at 210; *United States v. Sorren,* 605 F.2d 1211, 1213 (1st Cir.1979); *see also Lauro Lines,* 490 U.S. at 503, 109 S.Ct. at 1980 (Scalia, J., concurring) (explaining that the collateral issue must be "sufficiently important to overcome the policies militating against interlocutory appeals"). Although the question, admittedly, is not free from doubt—the Convention, after all, contemplates the possibility of removal when a state-court proceeding relates to an arbitration agreement and involves a foreign reinsurer—we believe that the *Burford*-based decision as to which forum, state or federal, will ultimately determine arbitrability lacks the necessary high degree of importance that is demanded. This conclusion is scarcely original. Both the Court, in *Thermtron,* and the Congress, in enacting 28 U.S.C. § 1447, have adumbrated that, absent exceptional circumstances, the determination that one particular court, rather than some other equally qualified court, will adjudicate an issue is not so vital as to outweigh the interests of the parties and of society in the swift, efficient administration of justice. Indeed, *Thermtron* and section 1447 serve as vivid reminders that, when remand is at stake, the policies militating against interlocutory appeal possess their full vigor. *See generally* 14A Charles A. Wright, et al., *Federal Practice and Procedure* § 3740 (1985 & Supp.1993).

We hold, therefore, that an order to remand premised on *Burford* abstention is not immediately appealable under the *Cohen* rubric. In reaching this result, we find ourselves in agreement with the Second Circuit. *See Corcoran*, 842 F.2d at 35. We expressly decline to extend the Fifth Circuit's decision in *McDermott Int'l v. Lloyds Underwriters*, 944 F.2d 1199, 1203 & n. 5 (5th Cir.1991), beyond the facts there presented.[4] When all is said and done, in this case, as in *Garcia*, 6 F.3d at 5, "we cannot find a 'collateral order' exception large enough to fit our case that does not swallow up (and thereby simply disregard) the general rule."

**3. The Federal Arbitration Act.** The Federal Arbitration Act is the last source of the Reinsurers' effort to generate an adequate jurisdictional showing.[5] The Act provides, *inter alia*, that an appeal may be taken from an order refusing a stay pending arbitration or denying a motion to compel arbitration. *See* 9 U.S.C. § 16(a)(1)(A), (C) (Supp. V 1992). Here, the district court, after remanding the case, stated that it was denying appellants' motions to compel arbitration and stay the litigation, without prejudice. The Reinsurers endeavor to appeal from these "denials." We are unimpressed.

We think it is evident that the district court, having indicated its intention to remand the case to state court, added the "denied without prejudice" language merely as a way of flagging that it intended the arbitrability issue to be decided in a state court and that the federal court, in remanding, took no view of arbitrability. The district court's remarks, then, did not deal with the merits of the arbitration question and were not arbitrability denials of the sort that the Federal Arbitration Act makes immediately appealable. *Compare Asset Allocation & Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 574 (7th Cir.1989) (finding district court's order appealable under Federal Arbitration Act) *with Jeske v. Brooks*, 875 F.2d 71, 73 (4th Cir.1989) (finding district court's order inappropriate for appeal). To hold otherwise would be mechanically to elevate form over substance, a practice that we have consistently spurned. *See, e.g., United States v. Bramble*, 925 F.2d 532, 534 (1st Cir.1991); *Maine v. Thomas*, 874 F.2d 883, 886 (1st Cir.1989).

The Reinsurers cannot achieve a different result even if the district court acted with a more meddlesome intent. Once it remanded the case to a state forum, the district court lost jurisdiction over the case and, therefore, lacked the authority to issue substantive orders of the sort that the Reinsurers suggest were issued here. *See, e.g., In re La Providencia Dev. Corp.*, 406 F.2d 251, 252–53 (1st Cir.1969); *see also General Elec. Co. v. Byrne*, 611 F.2d 670, 672–73 (7th Cir.1979) (per curiam) (stating that a "transfer order deprives the transferor court of jurisdiction until the case is returned to it");

---

4. While we are comfortable with the result in *McDermott*, given its facts, some of the language contained in the opinion is potentially mischievous. With respect, we think the court overgeneralized by failing to distinguish between cause and effect. *McDermott* properly found the district court's remand order to be appealable under the collateral order doctrine, but this outcome is not dictated merely because the remand order had the *"effect* [of] allow[ing] a state court to decide the question of arbitrability." *McDermott*, 944 F.2d at 1203 (emphasis supplied). Rather, the question of where the parties' dispute regarding arbitration was to be resolved constituted a collateral issue because the parties had jointly made it a collateral issue, *i.e.*, they had included a service-of-suit clause in the contract and the court based the remand on its substantive interpretation of that provision. *See id.*, at 1201. The mere fact that a remand order has the effect of deciding that issues are to be resolved in a state court does not mean that, in every case, the identity of the forum is a collateral issue within the ambit of *Cohen*. *See Corcoran*, 842 F.2d at 35. After all, remand orders always cause the disputed issues to be determined in state court; and *McDermott'*s reasoning, applied across the board, would make virtually *all* remand orders (save only those which are subject to the statutory bar, *see supra* Part II(A)) appealable collateral orders—a position to which we cannot subscribe.

5. We need not consider whether the *Enelow–Ettelson* doctrine, *see Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), might make the remand order immediately appealable under 28 U.S.C. § 1292(a)(1). The Court has overruled that line of cases. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279–88, 108 S.Ct. 1133, 1138–43, 99 L.Ed.2d 296 (1988).

*cf. Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 445 (9th Cir.1992) (holding that a district court possessed the authority to award attorneys' fees after remanding only because the award of fees was specifically authorized by the remand statute and was, therefore, "collateral to the decision to remand"); *In re Spillane,* 884 F.2d 642, 645–46 (1st Cir.1989) (similar, but in venue-transfer context). Put another way, absent an emergency or some other extraordinary circumstance, the district court could only have issued substantive orders necessary to reaching the decision to remand.[6] *See, e.g., Karl Koch,* 838 F.2d at 659 (remanding because court interpreted a forum-selection provision as requiring parties to litigate in state court); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 275 (9th Cir. 1984) (similar).

In the last analysis, whether or not we construe the district court's remarks as rulings, the bottom line is unaffected: the denials have no legal effect aside from making clear the dimensions of the issues that the court proposed to leave unadjudicated.

**4. Summary.** To recapitulate, under the circumstances of this litigation, the district court's remand order is not a final judgment; it is not an appealable collateral command; and its accouterments are not appealable under the Federal Arbitration Act. Because the Reinsurers have been wholly unable to demonstrate a cognizable hook on which appellate jurisdiction may be hung, their appeal must be dismissed for want of jurisdiction.[7]

## III. THE PETITION FOR MANDAMUS

▮ Anticipating problems in topping the jurisdictional hurdles, the Reinsurers also seek to proceed by way of mandamus. They ask that we issue a writ requiring the district court to vacate the remand order, accept jurisdiction over the case, compel arbitration

of a portion of the underlying dispute, and stay proceedings as to the remainder. We see no reason to honor the request.

▮ Although federal appellate courts have power to issue prerogative writs that are "necessary or appropriate in aid of their . . . jurisdiction[ ]," 28 U.S.C. § 1651(a) (1988), that power must be used stintingly and brought to bear only in extraordinary situations. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam); *Recticel,* 859 F.2d at 1005. Thus, prerogative writs, although frequently sought, are seldom issued. To succeed in the hunt, a writ-seeker usually must demonstrate that the challenged order is palpably erroneous and that he faces some special risk of irreparable harm.[8] *See In re Pearson,* 990 F.2d 653, 656 & n. 4 (1st Cir.1989) (collecting cases). Given the stringency of this standard, it is unsurprising that "[i]nterlocutory procedural orders . . . rarely will satisfy th[e] precondition for mandamus relief." *Recticel,* 859 F.2d at 1006; *accord Pearson,* 990 F.2d at 656. We explain briefly why this case is no exception to the rule.

▮ In the first place, "mandamus [generally] will not issue to control exercises of discretion." *Recticel,* 859 F.2d at 1006; *accord DeBeers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130, 1132–33, 89 L.Ed. 1566 (1945); *In re Bushkin Assocs., Inc.* 864 F.2d 241, 245 (1st Cir.1988). *Burford*-based abstention decisions, while more closely cabined under the current legal regime, *see, e.g., Fragoso,* 991 F.2d at 883–86, still contain a discretionary element. *See, e.g., General Glass Indus. Corp. v. Monsour Medical Found.,* 973 F.2d 197, 203 (3d Cir.1992), *New Orleans Pub. Serv., Inc. v. New Orleans,* 798 F.2d 858, 862 (5th Cir.1977); *Richardson v. City, etc., of Honolulu,* 759 F.Supp. 1477, 1483 (D.Haw.

---

**6.** The court's power to issue such orders is derivative of, and implicit in, its power to remand.

**7.** Inasmuch as we hold that there is no affirmative source conferring jurisdiction over the appeal essayed by the Reinsurers, we need not address any of Doughty's other challenges to this court's appellate jurisdiction.

**8.** We have, on infrequent occasions, relaxed these requirements and exercised our powers of "advisory mandamus" when matters of great public import are involved. *See In re Justices of the Supreme Court of Puerto Rico,* 695 F.2d 17, 25 (1st Cir.1982). The Reinsurers have not urged us to use advisory mandamus here and, at any rate, this is plainly not a suitable case.

1991). It follows that, to the degree the district court understood controlling abstention law and exercised its discretion within that known law, this case is a poor candidate for mandamus relief. *See Bushkin,* 864 F.2d at 245 (explaining that "mandamus is generally thought an inappropriate prism through which to inspect exercises of judicial discretion"). Even *misuses* of discretion will not provoke mandamus relief absent a clear usurpation of power or some similarly egregious circumstance. *See id.*

In the second place, we cannot say that the district court's decision in this case represents a palpably erroneous application of *Burford* abstention law. Although the radius of permissible *Burford* abstention has shrunk in recent years, *see New Orleans Pub. Serv., Inc. v. City Council of New Orleans,* 491 U.S. 350, 360–64, 109 S.Ct. 2506, 2513–16, 105 L.Ed.2d 298 (1989); *Fragoso,* 991 F.2d at 882–86, this litigation involves a number of novel questions, including whether the complex system Massachusetts has enacted for the liquidation of domestic insurance companies is the sort of scheme that warrants serious consideration as a basis for abstention. After reviewing the record, we can say only that the district court's *Burford*-based decision is possibly erroneous—not that it is palpably so. That is not enough to satisfy the customary precondition for mandamus relief. *See Bushkin,* 864 F.2d at 245. And, moreover, mandamus seems an awkward vehicle for resolving the doubtful issues that permeate the *Burford* equation. *See Amoco Petroleum,* 964 F.2d at 713 (collecting cases); *Corcoran,* 842 F.2d at 36–37 (declining, in similar circumstances, to issue a writ of mandamus).

▮ We note, too, that the record reveals several potential non-*Burford*-based reasons for remanding this case which, on the surface, appear to possess merit. It is a prerequisite to mandamus relief that the ruling below be "palpably improper," *LaBuy v. Howes Leather Co.,* 352 U.S. 249, 256, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957), and that a suitor's entitlement to the claimed relief be plain as a matter of law, *Pearson,* 990 F.2d at 657 & n. 4. We do not believe these criteria are satisfied if the disputed disposition, albeit premised on a doubtful ground, is nevertheless probably sustainable on an alternative ground. The case before us illustrates the point: whatever may be said of the district court's *Burford* rationale, the outcome of the federal adjudicative process—retransmitting the litigation to the state court—cannot by any stretch be classified as palpably erroneous.

Also, we descry no special risk of irreparable harm. The Reinsurers' rhetoric does not change the fact that the remand order leaves the issue of arbitrability unresolved. The state court will decide that issue, and the Reinsurers will have rights to appeal within that system should they so elect. While the Reinsurers may prefer that a federal forum determine the result, they have offered no reason why the frustration of this preference is likely to cause irreparable harm. *Cf., e.g., Garcia,* 6 F.3d at 5 (finding mandamus appropriate where a "critical legal determination" would, following remand, be insulated from "meaningful review").

▮ There is an overriding consideration that touches upon all the above. A court that is asked to issue a writ of mandamus is itself invested with considerable discretion. *See Kerr v. United States District Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1975). Given the facts and posture of this dispute, the wise exercise of judicial discretion strongly favors continuing to employ mandamus sparingly, *Recticel,* 859 F.2d at 1005; *see also Boreri,* 763 F.2d at 26 (warning that "the currency [of mandamus] is not profligately to be spent"), and allowing this case to proceed in state court. The Convention, which is the sole source of ostensible federal jurisdiction, applies neither to the numerous reinsurance contracts that do not contain arbitration clauses nor to those underwritten by the several domestic insurance providers. Most of the years in controversy are years in which the reinsurance arrangements are not even arguably affected by arbitration clauses. The net result is that, should we heed the Reinsurers' pleas, the litigation would be split between federal and state court.

Further, the crux of the controversy involves the contested interpretation of con-

tract provisions presenting chiefly matters of state law. Claims have also been brought under Massachusetts unfair trade practice statute. The larger context in which the litigation is set concerns the business of insurance, which the McCarran–Ferguson Act, 15 U.S.C. § 1012 (1988), unequivocally declares to be a state-law preserve. The Commonwealth, through its Insurance Commissioner, is a real party in interest. In all, it likely understates the obvious to acknowledge that "state issues substantially predominate." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). When these features are coupled with the host of significant questions concerning the propriety of the removal order, it would be rashly injudicious for us to exercise our discretion to sponsor mandamus, thereby wresting the suit from its natural habitat and abetting its balkanization.

We need go no further. It is apodictic that "[m]andamus cannot be allowed to become a handy substitute for an otherwise unavailable interlocutory appeal." *Bushkin*, 864 F.2d at 265. Thus, a party seeking the issuance of a prerogative writ bears a heavy burden. The Reinsurers have neither carried this burden nor persuaded us that we should gratuitously oust the state court of jurisdiction over part of the litigation, leaving the remainder to linger there. The petition for mandamus must, therefore, be denied.

## IV. CONCLUSION

To summarize, although the statutory bar, 28 U.S.C. § 1447(d), does not pertain, the Reinsurers cannot clear the other jurisdictional hurdles that dot the path to federal appellate relief. We lack jurisdiction over their appeal and we also lack a cognizable basis for issuing a prerogative writ.

*The appeal is dismissed for want of appellate jurisdiction. The petition for issuance of a writ of mandamus is denied. Costs are to be taxed in favor of respondent-appellee.*