GRIFFITH, Circuit Judge,
with whom Circuit Judges ROGERS and TATEL join except as to footnote 2,
concurring:
I agree that police officers violated Paul Askew’s Fourth Amendment rights and so join the majority opinion in almost every respect. Given the importance of this appeal, I write separately to clarify my rationale for rejecting the government’s principal argument before the en banc court. Hayes v. Florida noted in dicta that a brief detention for the purpose of fingerprinting a suspect is not necessarily an unconstitutional seizure. 470 U.S. 811, 816-17, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). The government argues that this dicta created a new exception to the probable cause requirement for evidentiary searches. Nothing the Supreme Court said in Hayes or its progeny supports this argument, and it is not our prerogative to create a new exception to the probable cause requirement of the Fourth Amendment. We are bound by Supreme Court precedent to subject the unzipping of Askew’s jacket to “the textual and traditional standard of probable cause.” Arizona v. Hicks, 480 U.S. 321, 329, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Because the unzipping cannot satisfy that standard, I agree that we should reverse the judgment of the district court.
When police officers unzipped Askew’s jacket, they conducted a search of his person. Where zipping up creates a “reasonable expectation of privacy,” Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring), as it does in this case, to unzip is to search. See, e.g., New Jersey v. T.L.O., 469 U.S. 325, 347, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (unzipping purse compartment); New York v. Belton, 453 U.S. 454, 456, 462-63, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (unzipping jacket pocket); United States v. Brown, 671 F.2d 585, 586 (D.C.Cir.1982) (per curiam) (unzipping pouch); United States v. Waller, 426 F.3d 838, 844 (6th Cir.2005) (unzipping luggage). That the unzipping may have been minimally intrusive is immaterial. See Hicks, 480 U.S. at 328-29, 107 S.Ct. 1149. The Fourth Amendment prohibits such a search in the absence of probable cause. See Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Hicks, 480 U.S. at 325-29, 107 S.Ct. 1149; Almeida-Sanchez v. United States, 413 U.S. 266, 269-70, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Sibron v. New York, 392 U.S. 40, 62-66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Henry v. United States, 361 U.S. 98, 100-02, 104, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Carroll v. United States, 267 U.S. 132, 149, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925).
The unzipping of Askew’s jacket does not fit within any of the exceptions to the probable cause requirement that have been created by the Supreme Court. As I read the cases, these exceptions can be divided into two general categories. The officer safety cases allow a minimally intrusive search that protects officers from harm. See, e.g., Terry v. Ohio, 392 U.S. 1, *1145 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (protective frisk of outer clothing for weapons); Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (protective sweep during home raid to prevent ambush); New York v. Class, 475 U.S. 106, 115-18, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (officer not required to permit suspect’s re-entry into car where weapon may be hidden); Pennsylvania v. Mimms, 434 U.S. 106, 109-11, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam) (compelling suspect to alight from car during traffic stop); United States v. Robinson, 414 U.S. 218, 234-35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (search incident to arrest to disarm suspect before taking into custody). The special needs cases allow a search that advances a governmental end deemed by the Supreme Court to be weightier than the typical law enforcement interest. See, e.g., United States v. Knights, 534 U.S. 112, 120-22, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (monitoring probationers); Skinner v. Ry. Labor Executives’ Ass’n, 489 U.S. 602, 619-20, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (preventing intoxicated employees from operating railroads); T.L.O., 469 U.S. at 340-41, 105 S.Ct. 733 (protecting schoolchildren); Camara v. Municipal Court, 387 U.S. 523, 534-39, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (inspecting buildings for compliance with municipal code). These two types of exceptions do not apply to garden-variety searches for evidence, which are governed by the probable cause requirement. See United States v. Colyer, 878 F.2d 469, 478 (D.C.Cir.1989).
The government concedes that probable cause to justify the unzipping was absent but makes no effort to fit the search of Askew within either category of established exceptions. Instead, the government argues that the search fits within a new exception created by Hayes for identification searches.[1] I find no basis in Hayes for that conclusion. The hunt for an identification-search exception begins, like so many efforts to weaken the probable cause requirement, with Terry v. Ohio. The government asserts that the search of Askew’s person is not limited by probable cause because the purpose of the unzipping, identification of a suspect, was “reasonably related to the purpose of the Terry stop.” Government’s En Banc Br. at 14. Terry allows an officer lacking probable cause ■ to make a “brief stop [ (i.e., seizure) ] of a suspicious individual, in order to determine his identity,” Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), so the government argues that a search calculated to identify a suspect should also be permissible on less than probable cause. The unspoken premise is that the power to search a suspect is as broad as the power to seize him. But this asks us to assume that whatever Terry said about “seizures” applies equally to “searches.” In fact, Terry’s regime of stops and frisks distinguishes between the two. An officer lacking probable cause may seize a suspect to determine his identity, but must limit his search to a protective frisk for weapons. See Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Michigan v. Long, 463 U.S. 1032, 1052 n. 16, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); Ybarra v. Illinois, 444 U.S. 85, 93-94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *1146 Dunaway v. New York, 442 U.S. 200, 210, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Sibron v. New York, 392 U.S. 40, 65-66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Terry, 392 U.S. at 30, 88 S.Ct. 1868; see also 4 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.6(g) (4th ed. 2004) (“[T]here is no search-for-evidence counterpart to the Terry weapons search, permissible on only a reasonable suspicion that such evidence would be found.”) (quotation marks omitted). Terry allows an identification seizure. It does not permit an identification search.
The government, forced to look beyond Terry for its new exception, claims to have found it in the following language from Hayes, 470 U.S. at 816-17, 105 S.Ct. 1643 (citations omitted):
None of the foregoing implies that a brief detention in the field for the purpose of fingerprinting, where there is only reasonable suspicion not amounting to probable cause, is necessarily impermissible under the Fourth Amendment. In addressing the reach of a Terry stop in Adams v. Williams, we observed that “[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.” Also, just this Term, we concluded that if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information. There is thus support in our cases for the view that the Fourth Amendment would permit seizures for the purpose of fingerprinting, if there is reasonable suspicion that the suspect has committed a criminal act, if there is a reasonable basis for believing that fingerprinting will establish or negate the suspect’s connection with that crime, and if the procedure is carried out with dispatch. Of course, neither reasonable suspicion nor probable cause would suffice to permit the officers to make a warrantless entry into a person’s house for the purpose of obtaining fingerprint identification.
The government contends that this passage, which nowhere mentions “searches,” creates a new exception to the probable cause requirement for searches that facilitate identification of a suspect. See Government’s En Banc Br. at 26. I reject that view.[2]
At issue in Hayes was the permissibility of seizing a person and transporting him to the stationhouse to obtain his fingerprints. The Supreme Court found the practice unconstitutional in light of another case about seizures, Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), which condemned a similar instance of stationhouse fingerprinting. Subsequent citations to Hayes confirm that the Court has only regarded it as a case about seizures. See Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 187-89, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004); Kaupp v. Texas, 538 U.S. 626, 630 n. 2, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003); Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).
*1147 Hayes’s suggestion that fingerprinting might be permissible during a Terry stop does not reach searches, because the Supreme Court has never held that fingerprinting is a search. See 1 LaFave § 2.2(d) (noting that “it is to be doubted that the question of whether fingerprinting is a search can be taken as settled”). The Supreme Court offered conflicting views of the issue within Hayes itself. Compare Hayes, 470 U.S. at 814, 105 S.Ct. 1643 (noting that fingerprinting does not involve “any of the probing into private life and thoughts that often marks interrogation and search”), with id. (implying that fingerprinting is a search by contrasting the practice to “other types of searches”); see also Cupp v. Murphy, 412 U.S. 291, 295, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (contrasting fingernail scraping, a search, to fingerprinting, not a search). Hayes’s fingerprinting dicta dealt with what was then, and is still, a non-search investigative step.
Hayes is about a seizure, not a search, so it cannot have created a new exception that would permit the search of Askew’s person in the absence of probable cause. The same is true of other cases the government cites in support of its purported identification-search exception. See Hiibel, 542 U.S. at 187-89, 124 S.Ct. 2451 (upholding state stop-and-identify law as authorizing reasonable seizures); Illinois v. Lidster, 540 U.S. 419, 426-28, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004) (allowing brief seizure at highway checkpoint to identify witnesses to hit-and-run accident); United States v. Place, 462 U.S. 696, 703-04, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (allowing brief seizure of luggage to conduct dog sniff); Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) (allowing seizure of home occupants during execution of search warrant).
My adherence to the textual distinction between “searches” and “seizures” is consistent with the Supreme Court’s Fourth Amendment jurisprudence. For example, the Court has justified a judgment about seizures by noting that it was not dealing with a search. United States v. Martinez-Fuerte, 428 U.S. 543, 561, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). The Court has also held that a search and a seizure require different types of proof before they are permissible. Consider Terry v. Ohio itself: A Terry stop (i.e., seizure) requires reasonable suspicion that criminal activity is afoot, United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), while a Terry frisk (i.e., search) requires reasonable suspicion that the stopped individual may have a weapon, Terry, 392 U.S. at 30, 88 S.Ct. 1868. If there were no meaningful distinction between searches and seizures, then police would be justified in frisking every person they stopped, yet this is not what the law allows. See Ybarra v. Illinois, 444 U.S. 85, 92-93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (rejecting routine frisks unsupported by “a reasonable belief that [the person searched] was armed and presently dangerous”) (citing Adams, 407 U.S. at 146, 92 S.Ct. 1921, and Terry, 392 U.S. at 21-24, 88 S.Ct. 1868). Finally, as we noted in United States v. Colyer, 878 F.2d 469, 479 (D.C.Cir.1989), the Supreme Court has created analytical frameworks for seizures that it has never applied to searches:
Although there may be no compelling reason to differentiate between seizures on the basis of their intrusiveness and failing to likewise differentiate between types of searches, the fact remains that we are unable to point to a single Supreme Court case that has upheld a search on reasonable suspicion merely because it was minimally intrusive.
This differing treatment is sensible, as the separate protections against unreasonable searches and unreasonable seizures safeguard different interests. See Horton v. California, 496 U.S. 128, 133, 110 S.Ct. *1148 2301, 110 L.Ed.2d 112 (1990) (“The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property.”); see also United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).
* * *
Hayes held that police cannot transport a suspect to the stationhouse for fingerprinting without probable cause, consent, or prior judicial authorization. 470 U.S. at 813-16, 105 S.Ct. 1643. Its observation that “a brief detention in the field for the purpose of fingerprinting ... is [not] necessarily impermissible under the Fourth Amendment,” id. at 816, 105 S.Ct. 1643, was unnecessary to decision of the case and so was dicta. See Gersman v. Group Health Ass’n, Inc., 975 F.2d 886, 897 (D.C.Cir.1992); Cross v. Harris, 418 F.2d 1095, 1105 n. 64 (D.C.Cir.1969); Noel v. Olds, 138 F.2d 581, 586 (D.C.Cir.1943). The government concedes this point, Government’s En Banc Br. at 26, but urges us to accord controlling significance to this dicta all the same. It is true that “ ‘[carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.’ ” United States v. Oakar, 111 F.3d 146, 153 (D.C.Cir.1997) (quoting Doughty v. Underwriters at Lloyd’s, London, 6 F.3d 856, 861 n. 3 (1st Cir.1993)) (alteration in original). But if anything more firmly commands the attention of the courts of appeals than Supreme Court dicta, it is Supreme Court holdings. By the time Hayes issued in 1985, the Supreme Court had already established the probable cause requirement for searches and its two categories of exceptions through a series of carefully articulated holdings.
The government now claims that dicta have overtaken holdings. I reject this argument because it reverses the accepted hierarchy of legal authority.[3] If there is to be an identification-search exception to the probable cause requirement of the Fourth Amendment, we must leave it for the Supreme Court to create. Cf. Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions.”). The government would have us believe that Hayes pierced a new hole in the probable cause requirement by way of an aside about fingerprinting. But just as Congress does not “hide elephants in mouseholes,” Whitman v. Am. Trucking Ass’ns, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), the Supreme Court “does not decide important questions of law by cursory dicta inserted in unrelated cases,” In re Permian Basin Area Rate Cases, 390 U.S. 747, 775, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). The officer safety and special needs exceptions to the probable cause requirement were announced in cases that made clear the *1149 magnitude of the Fourth Amendment moment and that altered the course of the law through abundant progeny. The supposed Hayes identification-search exception, by contrast, came into this world unannounced and lay idle until two judges on a three-judge panel of this court employed it over twenty years later. I think the Supreme Court would be surprised to learn that Hayes created an exception to the probable cause requirement, for it “does not normally overturn, or so dramatically limit, earlier authority sub silentio.” Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 18, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000).
Judicial creation of a constitutional code of criminal procedure has given the Supreme Court primary responsibility for regulating police behavior. See generally Henry J. Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Cal. L.Rev. 929 (1965); William J. Stuntz, The Political Constitution of Criminal Justice, 119 Harv. L.Rev. 780 (2006). With regard to evidentiary searches, the Supreme Court has drawn the line of constitutional “unreasonab[ility]” at probable cause. See Arizona v. Hicks, 480 U.S. 321, 329, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); cf. Dunaway v. New York, 442 U.S. 200, 214, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (noting, in a case concerning seizures, that “the requisite ‘balancing’ has been performed in centuries of precedent and is embodied in the principle that seizures are ‘reasonable’ only if supported by probable cause”). Hayes created no exception to the Supreme Court’s probable cause requirement for searches, be they for identification or any other investigatory purposes. As a court of appeals, we are in no position to create a new exception that would have far-reaching effects on how the police may properly investigate crime. Rather, we are bound by Supreme Court precedent, which in this case requires probable cause to support the unzipping of Askew’s jacket. Because there was none, I agree that we should reverse the judgment of the district court denying Askew’s motion to suppress evidence of the firearm.

. The government has only recently come to regard Hayes as significant, having relegated the case to a single “cf." citation in its brief to the three-judge panel. Government's Br. at 20. Now that two members of this court have opined that Hayes governs this matter, United States v. Askew, 482 F.3d 532, 540-45 (D.C.Cir.2007), vacated and reh’g en banc granted, No. 04-3092 (D.C.Cir. July 12, 2007), the government has placed greater emphasis on the case. See Government’s En Banc Br. at 12, 24, 25-26, 34 (citing Hayes); id. at ii (identifying Hayes as a "[c]ase[] chiefly relied upon”).

. A majority of the court concludes that even if Hayes created an identification-search exception, the government cannot prevail because the police did not have a reasonable basis for believing that a view of the sweatshirt beneath Askew’s jacket would establish or negate Askew’s connection with the robbery. See supra Majority Opinion, Part III.D. I decline to join this portion of the opinion.

. See, e.g., Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("It is to the holdings of our cases, rather than their dicta, that we must attend...."); St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (“[W]e think it generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code.”); Hawks v. Hamill, 288 U.S. 52, 58-59, 53 S.Ct. 240, 77 L.Ed. 610 (1933) (noting that "an authority [can] be ranked as a definitive holding or merely a considered dictum”).